[Civ. No. 15172. First Dist., Div. Two. Feb. 16, 1953.]

JULIE F. BASS, Respondent, v. PETER HELSETH et al., Appellants; JAMES R. THURSTON et al., Intervenors and Respondents.

Alan W. Davidson and Louis B. DeAvila for Appellants.

John A. Garfinkel, Julian W. Mack II, Arthur D. Nearon and Laurence D. Benamati for Respondents.

NOURSE, P. J.—This is an action between several lot owners in a subdivision concerning the application of the uniform building restrictions of the subdivision to the irregularly situated lot of defendants and appellants Helseth.

All parties to the action own lots in Ingleside Terraces in San Francisco, the map of which subdivision, then owned by the Urban Realty Improvement Company, was filed in 1913. All deeds from said company to original grantees of lots contained the uniform restrictions appended as Exhibit "A" to the findings. All said deeds were recorded. It was provided that the restrictions were covenants running with the land and each part thereof and also constituted easements appurtenant to each portion of said Ingleside Terraces, that each future owner of a lot would have the right of enforcement in equity and that said restrictions were reserved as to all residence lots in the tract.

The parts of the restriction mainly involved are parts third and sixth which read in part: "THIRD: That no main wall of any house or building to be erected or maintained on the above described real property shall be nearer to the street line of said property than the building line (which is 12 to 25 feet from the front or side front of the property line) indicated upon the official plat of said property; and no wall of any house or building on said real property shall be nearer than four (4) feet distant from the exterior side, or rear end lines of any lot; . . . provided, further that no dwelling house or appurtenance or outbuilding shall at any time be erected or stand within less than four (4) feet of the northerly exterior side line of any lot; nor less

than ten (10) feet from the exterior southerly line of any lot herein agreed to be sold; provided, further, however, that on lots having Easterly and Westerly side lines, no such improvements shall be erected or stand within less than four (4) feet of such exterior Easterly side line nor within less than ten (10) feet of the said exterior Westerly side lines of said lots; provided, further that wherever side building lines are indicated on any lot on the said plat thereof, such said building lines shall control; . . .'' (No such side building lines were indicated on the plat as to the lots here involved.) ''SIXTH: That no dwelling house, together with other improvements, shall be erected or placed upon the above described real property which shall cost less than THIRTY-FIVE HUNDRED AND No/100 ($3500.00) DOLLARS. This value shall include the entire cost of the improvements with a builder's profit of not to exceed ten (10) per cent. The plan of such building and other improvements proposed to be erected or maintained upon the above described real property shall be submitted to the manager of the grantor company herein for his approval, and said dwelling house or other improvements shall not be erected nor shall any portion thereof be erected or maintained without the approval of said manager or of the Board of Directors of said Grantor Company. The decision of the Board of Directors of the Grantor Company herein as to the suitableness or sufficiency of the architectural plans of any building to be erected or maintained upon the said premises as to its beauty, utility and safety, and also to the minimum cost or value thereof, shall be conclusive and final.''

The problem presented is in how far under these provisions defendants Helseth were restricted from building near to the side lines of their Lot 21, block 2 in Ingleside Terraces, which defendants Helseth acquired in 1948. Although the simple grant deed by which they acquired it (not directly from the original grantor company) does not contain the uniform restrictions it is no longer denied on appeal that said uniform restrictions are in general binding on said defendants.

The Helseth lot faces on Moncada Way. For one facing said lot there is to the left of it on Moncada Way Lot 22, block 2, owned by plaintiff Bass and to the right Lot 20, block 2, owned by intervenors Baldwinson. At these lots Moncada Way curves strongly; the side lines of the lots are not parallel but run from the front on Moncada Way in a somewhat northerly direction but with a declination to

the east increasing from the left to the right. According to the directions inscribed on the map, defendants' Exhibit "B," the correctness of which is not disputed, this declination from the true northerly direction is approximately 27 degrees for the left side line of lot 22 (Bass), 35 degrees for the side line between the Bass lot and Lot 21 (Helseth), 47 degrees for the side line between the Helseth lot and Lot 20 (Baldwinson) and 50 degrees for the right side line of the Baldwinson lot. The court found on evidence without conflict that the Bass-Helseth dividing line runs north 35° 15'48" east and the Helseth-Baldwinson dividing line north 47°23'01" east. The Bass and Baldwinson dwellings had both been built when the Helseths acquired Lot 21. There was evidence from a former manager of the grantor company, the witness Leonard, indicating that with respect to the side line setback of the third restriction the side lines as a rule were considered easterly or westerly ones when the declination from the due south-north direction was less than 45 degrees, but northerly or southerly ones when said declination was more than 45 degrees. Accordingly when in 1914 Mrs. Bass acquired Lot 22, the grantor company, who built her house on it, considered the side lines as easterly and westerly and only a setback of 4 feet due at the easterly side line, the dividing line with the Helseth lot, although the Bass building at that side actually does not run parallel with the side line and nowhere reaches quite up to the 4-foot building line. When in 1945 intervenors Baldwinson bought Lot 20, they considered their side lines which both declined more than 45 degrees from the due north-south direction as northerly and southerly side lines with respect to the restriction and accordingly left only a 4-foot setback at the northerly side line, the one with Lot 21. The plans could not be submitted for the approval of the company because it was dissolved prior to 1940 after having sold all lots in the subdivision, but the correctness of the location of the Baldwinson home is not attacked in these proceedings.

When in 1949 defendants Helseth wished to build on Lot 21 they encountered the difficulty that both neighbors had taken only a 4-foot setback at their side line with said lot and both expected defendants to take the 10-foot setback so that a 14-foot distance between building lines would be maintained. However defendants did not wish to lose more than 14 feet of the width of their lot. They planned to take the 10-foot setback at the Baldwinson side and the 4-foot

setback at the side of Mrs. Bass, but when Mr. Helseth showed her the plan she objected. The Helseths then decided to move their house over two feet. It was disputed whether Mrs. Bass had assented to this compromise (the Baldwinsons had no objections) but the court found on conflicting evidence that she did not agree. When the Helseths put in forms for the concrete foundation of their house and began to pour concrete Mrs. Bass brought this action for an injunction, mainly to enjoin building less than 10 feet from the side line with her lot. The Baldwinsons intervened to prevent the contingency that, if plaintiff Bass would succeed in enforcing a 10-foot setback at her side, it would follow that the setback at their side would be only 4 feet. Several lot owners in Ingleside Terraces intervened on the side of plaintiff Bass to uphold the restriction.

From the evidence at the trial we note that the witness Leonard also testified that when change in the direction of the side lines caused complications in the application of the side line setback restrictions, the grantor company made adjustments when the plans for building on the lots involved in the change of direction were submitted. In one such case, relating to an exceptionally wide lot, a 10-foot setback was taken at both sides. The witness Waite, civil engineer and surveyor, testified among other things that from an engineering standpoint when for some reason a northerly line does not mean a true north line, it means a line which does not vary so much from true north as to become east or west, and that on that basis the dividing line between the Helseth and Baldwinson lots was the northerly line of the Baldwinson lot and the southerly line of the Helseth lot. He had made an inspection of a large part of the subdivision and had found a few instances of residences which were less than 14 feet apart, among which one where the adjoining buildings were only 8 feet apart. At the trial the attorney of intervenors Baldwinson declared that his clients were willing to equalize the setbacks and restrict the setback at their side to 7 feet if the parties at the other side were willing to do the same. The attorney for the plaintiff Bass declared that his side was willing to accept a setback of 8 feet by way of compromise.

The court, after having made a personal inspection of the premises, found among other things in substance that the restrictions, including those concerning the side line setbacks, constitute a general and common plan covering the whole area to which the Helseth lot belongs, that the Bass-

Helseth dividing line is the westerly side line of the Helseth lot, the Baldwinson-Helseth dividing line the southerly side line of the Helseth lot, and concluded that the restrictions require defendants Helseth to maintain a 10-foot setback at both side lines of their lot, but that it would be inequitable to require them to leave a 10-foot distance at both sides but not to leave 8 feet distance at both sides and that plaintiff and intervenors were entitled to enforce the restrictions. A permanent injunction to enforce an 8-foot setback at both sides issued in their behalf and defendants Helseth appeal.

Their contentions are of two kinds. The one which attacks the finding that the Bass side line is the westerly side line and the Baldwinson side line the southerly side line of their lot is clearly without merit. It is said that said finding is arbitrary, contradictory, unreasonable and contrary to common knowledge because west and south cannot be opposite each other. However, side lines of a lot need not be parallel and they are not parallel in this case. One side line can then be more westerly, the other more southerly. Equally erroneous is the contention that said finding is not supported by the evidence. The testimony of both the former manager of the company, Leonard, and the surveyor Waite supports the finding, and the 45 degree declination rule mentioned above gives a logical basis for the result. Against it appellants urge only that the side lines of defendants' lot are parallel with a side of Paloma Avenue where it intersects Ocean Avenue and that said side somewhere in the uniform restrictions is called the northerly side; therefore both side lines of the lot must be northerly and southerly side lines. There is no finding or evidence that said side lines and said side of Paloma Avenue are parallel; they cannot be because the side lines themselves are not parallel. Neither is there evidence as to the exact direction of said side of Paloma Avenue or a showing that said side is not actually the northerly side under the 45 degree declination rule, *supra*.

Appellants' main argument is that even if the finding as to the side lines were correct the restrictions cannot constitute a basis for the result reached. It is first pointed out that as to the question whether a restriction on certain land is created the deed is the exclusive memorial of the intention and rights of the parties, that restrictions are strictly interpreted in favor of the free use of the property and all doubts must be resolved in favor of such free use. It is argued that under such interpretation the restriction quoted, requiring a

10-foot setback at one side, applies only to lots which have side lines that are either a northerly *and* a southerly or an easterly *and* a westerly one and that the restriction has no application to a lot that, as here found, has one side line considered westerly, the other southerly. No side line setback, except the general setback of four feet contained in the first part of restriction third is provided for such a lot. It is also contended that in legal language northerly, southerly, easterly, westerly mean due north, south, east and west, so that the fact that the lines of the Helseth lot do not follow such due directions causes a doubt to be resolved in favor of free use. It is further argued that the restrictions only provide for a setback of 10 feet at one side line, and 4 feet at the other, 14 feet in total and that to require from defendants a total setback of 16 feet, equally divided over both sides finds no support in the restriction as written, is arbitrary and is taking of property without due process. It is said that no authority for such setback can be found in the sixth restriction quoted because it must be held to relate to minimum costs and suitableness of architectural plans as to beauty, utility and safety of the building, as to which qualities the decision of the corporation is made final in said restriction.

In support of the rule of strict interpretation of restrictions on real property appellants cite mainly *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120] and quote from 26 Corpus Juris Secundum p. 515 (Deeds § 163) as follows: "Restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, all doubts being resolved in favor of a free use of property and against restrictions." There is no doubt that these rules are correct so far as they go, but they give only part of the picture. The quotation selects one part of the general rules of construction stated in said section of Corpus Juris Secundum. The section begins as follows: "In construing covenants or restrictions as to the use of property, the circumstances and conditions surrounding the parties and property must be considered as well as the manifest objects of the grant or restriction. So, the intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation. In other words, effect is to be given to the intention of the parties, as shown by the language of the instrument, considered in connection with the circumstances surrounding the transaction, and the object had in view by the

parties.'' After the rule as to strict interpretation quoted by appellants there follows: ''This rule, however, obtains only where the parties have failed to express their meaning with sufficient clarity to enable the court to say that its construction is plain and admits of no doubt; the rule will not be applied to defeat the obvious purpose of the restriction. . . .'' See to the same general effect 7 Thompson on Real Property, Permanent Edition, section 3569 (interpretation of restrictions according to apparent purpose) and 14 Am. Jur. 620 et seq. §§ 211-212; *Walker* v. *Haslett*, 44 Cal.App. 394, 398 [186 P. 622].

■ When we apply these rules of construction as a whole to the question before us it is obvious that northerly, easterly, etc., in the third restriction cannot be intended and should not be interpreted to make said restriction applicable to those lots only which have side lines due north or due east. The restrictions are in general intended to apply to all residence lots in the subdivision and the third restriction is evidently intended to provide sufficient light and air all over said subdivision. As the map shows that there is hardly a lot in the subdivision with side lines due north or due east the proposed interpretation would clearly destroy the intended effect of the restriction. (Compare Gov. Code, § 23072, for the possibility of a wider meaning of northerly, etc., when controlled by other words, lines or monuments, and Civ. Code, § 1645, which for the interpretation of contracts permits deviation from the technical meaning of words when they are clearly used in a different sense.)

■ However the third paragraph of the restriction does not provide, as contended by respondent, that there must be a 10-foot setback at any westerly side line. The third paragraph contains the following provisions with respect to side line setbacks if its language is taken literally: A minimum setback of 4 feet for any side line; a setback of 4 feet at the northerly side line of any lot; a setback of ten feet at the southerly side line of any lot; *on lots having easterly and westerly side lines* a setback of 4 feet at the easterly side line and 10 feet at the westerly side line. There is a clear difference in formulation between the provision regarding northerly and southerly side lines and the one regarding easterly and westerly side lines. The former relates to any northerly or any southerly side line, the latter is expressly restricted to lots having easterly *and* westerly side lines. The result of a literal application of the restriction to appellants' lot would be a 10-foot setback at the

Baldwinson side, as a southerly side line, and a 4-foot setback at the Bass side, under the general minimum provision, the side line being westerly but there being no easterly side line. This is exactly what appellants originally planned.

Respondent Bass in claiming a 10-foot setback at her side of the Helseth lot does not give any argument to refute the above literal construction. The only possible ground for ignoring the express restriction of the 10-foot westerly setbacks to lots with easterly *and* westerly side lines would be an apparent intention and purpose that the side building lines of adjacent lots should always be fourteen feet apart. But such intention is not expressed and there was evidence, as stated before, that there were other residence buildings in the subdivision that were less than fourteen feet apart. Moreover the ignoring of said clause would lead in this case to 10-foot side line setbacks at both sides of the Helseth lot, a restriction more burdensome than is indicated in any manner in the deed. The intention apparent from the third paragraph of the restrictions is at least as clear that no lot owner should suffer more than a total of 14 feet in side line setbacks as that the distance between adjacent lateral building lines should be at least 14 feet. Under these circumstances the literal reading of the restriction which gives the lesser burden on the lot must prevail. It cannot be said that the literal meaning is so devoid of sense that it cannot have been intended. The preference given to a setback of 10 feet at any southerly sideline is understandable from the point of view that the southerly is the most desirable exposure whereas the westerly is the next best.

Appellants' position that the sixth section cannot justify restrictions as to side line setbacks more burdensome than those contained in the third section seems correct. In *Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442, 447 [211 P.2d 302, 19 A.L.R.2d 1268], it was held that when a restriction prohibits building without approval of plans and issuing of permits by the subdivider, said subdivider can deny permission on any reasonable ground where the provision in question was a separately numbered paragraph which did not contain any other specific restriction and there were no other specific restrictions which could provide a framework within which the right to approve plans could be said to be confined. Here the opposite is true. The sixth paragraph contains specific matter to which the free right of approval applies and the

third paragraph contains specific provisions as to location of the buildings on the lots which confine the right of approval in that respect. The fact that the owner of one exceptionally wide lot did not object to 10-foot setbacks at both side lines cannot be decisive to extend defendants' burden.

It follows that there is no ground for an injunction and that the judgment must be reversed. The manner in which appellants wished to build at the Bass side did not violate any restriction, and the intended manner of building at the Baldwinson side was not objected to. Possibly an equalization of the 14 feet available for the side line setbacks on the Helseth lot as proposed by respondents Baldwinson might have had some advantage, but we do not find in the restrictions a sufficient basis for enforcement of that proposal by injunction. At any rate the equal setbacks totaling 16 feet could not be upheld. As intervenors Baldwinson did not claim anything they were not entitled to and did not on appeal defend the judgment appealed from there should be no award of costs against them.

The judgment is reversed with directions to the trial court to deny the permanent injunction, respondents with the exception of respondents Baldwinson to bear appellants' costs.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied March 18, 1953, and respondents' petition for a hearing by the Supreme Court was denied April 15, 1953.