GOLF VIEW IMPROVEMENT ASSOCIATION *v.* UZNIS.

1. COVENANTS—FLOOR AREA—MINIMUM COST.
   A restriction as to construction of a house upon lots in subdivision that it contain a given amount of floor area per floor will not be implied from the fact that under minimum cost expressly imposed a house with more than such floor area might have been erected for such cost at time the restrictions were originally adopted.

2. SAME—NOTICE OF GENERAL PLAN.
   The construction by the subdivider of 1 dwelling on a subdivision containing 39 lots is not sufficient to give notice of a general plan, binding upon subsequent lot purchasers, in the absence of a showing of any other conduct on the part of the subdivider calculated to effectuate that end.

3. SAME—GENERAL PLAN—CONSENT.
   A restriction or general plan, agreed upon by several lot owners in a subdivision by common consent and compliance therewith, cannot be fastened upon and made binding with respect to lots whose owners have not agreed thereto.

4. SAME—RECIPROCAL NEGATIVE EASEMENTS—COMMON OWNERSHIP—GENERAL PLAN.
   Reciprocal negative easements arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner and cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] See, generally, 14 Am Jur, Covenants, Conditions and Restrictions §§ 199, 202.
[2] 14 Am Jur, Covenants, Conditions and Restrictions § 200.
[3] 14 Am Jur, Covenants, Conditions and Restrictions § 197.
[4] 14 Am Jur, Covenants, Conditions and Restrictions § 192 *et seq.*

Appeal from Wayne; Miller (Guy A.), J. Submitted January 4, 1955. (Docket No. 8, Calendar No. 46,117.)  Decided March 9, 1955.

Bill by Golf View Improvement Association, a nonprofit corporation, and 6 landowners against John F. Uznis and Evelyn R. Uznis to restrain building of house claimed contrary to restrictions in subdivision. Bill dismissed. Plaintiffs appeal. Affirmed.

*Coy & Iannelli,* for plaintiffs.

*Edgar F. Mansfield (Roy G. Lord,* of counsel), for defendants.

DETHMERS, J.  Individual plaintiffs are owners of lots in Golf View Subdivision consisting of 39 lots in the city of Dearborn; corporate plaintiff is composed of lot owners.  Defendants own 1 of the lots, on which they propose to build a 2-story dwelling with 984 square feet of livable area on the first floor and 812 square feet on the second.  This is a suit to restrain its construction on the theory that it would violate applicable building restrictions because there would not be 1,100 square feet on each floor. From decree dismissing their bill of complaint, plaintiffs appeal.

In 1937, when the home of the original subdivider and those of 2 or 3 other lot owners had been constructed, written restrictions were signed and recorded by the owners of the lots in the subdivision limiting the use of lots to single residences, 2 stories in height, constructed of specified materials within certain building lines.  The restrictions did not expressly fix a minimum floor area, but provided in paragraph 5 as follows:

"5. No building shall be erected on said premises until the plans and specifications and location thereof has been approved in writing by Glover Watson Bondholders, Inc., or a committee appointed by the home owners whenever the latter is sufficient to take over this responsibility. However, in the event of such failure to approve or disapprove such design or location within a reasonable time, then such approval will not be required providing the cost of said building is not less than $10,000."

At time of trial 7 houses had been built on the subdivision by as many different lot owners. Plaintiffs say that all of the houses have areas in excess of 1,100 square feet for each of 2 floors, except 1, in which the area is 1,050 square feet per floor. They contend that this has established a general plan for the subdivision, binding on defendants, and prohibiting them from building a house on their lot with an area of less than 1,100 square feet per floor. For that reason the building committee of plaintiff corporation, acting under paragraph 5 above, declined to approve defendants' plans.

Plaintiffs refer to the provision in paragraph 5 that a dwelling might be built without committee approval, in case of unreasonable delay by the latter, provided it were built at a cost of not less than $10,000, as expressive of a $10,000 minimum restriction. They then point to testimony that in 1937, when the restrictions were adopted, a $10,000 2-story house, constructed of the type of materials required by the restrictions, could have been built with an area for each of its 2 floors in excess of 1,100 square feet. From this they conclude that defendants' proposed house, despite its projected cost of almost $21,000, would be violative of the restrictions because its 2 floors would not contain 1,100 square feet each. We do not accept this round-about interpretation of the restrictions to fix a minimum area when it could

have been expressed directly in so many words. We conclude that it would have been so expressed had that been the intent of the subscribers.

Plaintiffs rely on *West Bloomfield Co.* v. *Haddock,* 326 Mich 601, for the proposition that the provisions of building restrictions which give a committee the right to approve or disapprove proposed building plans are valid, but that the committee must exercise such right in a fair and reasonable manner. That begs the question. In the *Bloomfield Case* approval of the plans was withheld because the proposed building violated the express provisions of written restrictions. The question at bar is whether the committee acted fairly and reasonably and within its powers in seeking to impose restrictions not included in the recorded agreement. Contending in the affirmative, plaintiffs rely on *Ardmore Association* v. *Bankle,* 329 Mich 573. The case is distinguishable, however, for the reason that it was there held that the common grantor had established a general plan for the subdivision by the construction of 7 or 8 residences before selling lots. This was apparently on the theory that in so doing the subdivider had given as effective notice to subsequent lot purchasers of restrictions as he could have done by recording. Such is not the factual situation at bar. Here the construction of 1 dwelling by the subdivider was not sufficient to give notice of a general plan, binding upon subsequent lot purchasers, in the absence of a showing of any other conduct on the part of the subdivider calculated to effectuate that end. Applicable here is *Hart* v. *Kuhlman,* 298 Mich 265, in which this Court held that a restriction or general plan, agreed upon by several lot owners in a subdivision by common consent and compliance therewith, cannot be fastened upon and made binding with respect to lots whose owners have not agreed thereto. As said in that case (p 267):

"In *Sanborn* v. *McLean,* 233 Mich 227, 230 (60 ALR 1212), in speaking of reciprocal negative easements, we said:

" 'They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan.'

"The rights of defendant cannot be made to rest upon a mere neighborhood plan to which he was not a consenting party. This is not an instance of a grantor doing something on his remaining property which he has restrained his grantee from doing on neighboring premises."

There is no showing here of any action on the part of the common grantor which effected a general plan. Subsequent purchasers of some of the lots could not, by their own conduct, fasten a general plan on other lots whose owners had not consented thereto.

Affirmed, with costs to defendants.

Carr, C. J., and Butzel, Smith, Sharpe, Boyles, Reid, and Kelly, JJ., concurred.