Tom H. DAVIS and Hattie
Davis, Petitioners,

v.

Robert M. HUEY and Mary Paige Huey,
et al., Respondents.

No. C–27.

Supreme Court of Texas.

July 22, 1981.

Rehearing Denied Sept. 23, 1981.

Byrd, Davis & Eixenberg, Mike Davis, Austin, for petitioners.

Richard Crozier and Douglass D. Hearne, Eskew, Muir & Bednar, Doran Edkew, Austin, for respondents.

WALLACE, Justice.

Petitioners Tom H. Davis and Hattie Davis, husband and wife, appealed from a permanent injunction entered by the District Court ordering them to remove a portion of their residence built in a residential subdivision without approval of the developer pursuant to restrictive covenants of record. The Court of Civil Appeals affirmed the trial court judgment. 608 S.W.2d 944. We reverse the judgment of the Court of Civil Appeals and render judgment that Respondents, Robert M. and Mary Paige Huey, take nothing.

This is the second time this controversy has appeared before this Court. In 1977, the Hueys filed suit against the Davises alleging violation of restrictive covenants and seeking a temporary injunction to halt construction of their house and ordering the removal of the structure. The trial court denied the application for injunctive relief. The court of civil appeals reversed the judgment of the trial court on the grounds that there was no evidence that the developer had acted in an unreasonable and arbitrary manner in refusing to approve the construction plans for the Davises' house. *Huey v. Davis*, 556 S.W.2d 860 (Tex.Civ.App.—Austin 1977), *reversed*, 571 S.W.2d 859 (Tex. 1978). This Court reversed the judgment of the court of civil appeals on the grounds that the lower court exceeded the scope of appellate review of a temporary injunction and improperly granted premature review of the merits of the case. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978).

Northwest Hills, Section 7, a residential subdivision in Austin, Texas, was developed by the Austin Corporation. In 1965, prior to the sale of any lots in the subdivision, the Austin Corporation filed in the Deed Records of Travis County certain restrictive covenants applicable to the subdivision. These covenants are contained in ten paragraphs, numbers 7 and 8 being the ones primarily at issue in this cause. Paragraph 7 establishes the setback, front-line, side-line and rear-line limits of the lot in question. Paragraph 7 provides:

7. Set-Back, Front Line, Side Line and Rear Line

No structure shall be located or erected on any lot nearer to the front plot line

than twenty-five (25) feet, nor nearer than five (5) feet to any side plot line except that the total combined setback from both sides shall in no event be less than fifteen (15) feet, nor nearer than fifteen (15) feet to the rear plot line.

Paragraph 8 provides that prior to the commencement of construction on a lot, the lot owner is required to submit the construction plans to the developer or an architectural committee for approval. Paragraph 8 provides:

8. Architectural Control and Building Plans

For the purpose of insuring the development of the subdivision as a residential area of high standards, the Developers, or in the alternative an Architectural committee appointed at intervals of not more than five years by the then owners of a majority of the lots in Northwest Hills Section Seven Addition, reserve the right to regulate and control the buildings or structures or other improvements placed on each lot. No building, wall or other structure shall be placed upon such lot until the plan therefor and the plot plan have been approved in writing by the Developers. Refusal of approval of plans and specifications by the Developers, or by the said Architectural Committee, may be based on any ground, including purely aesthetic grounds, which in the sole and uncontrolled discretion of the Developers or Architectural Committee shall seem sufficient. No alterations in the exterior appearance of any building of structure shall be made without like approval. No house or other structure shall remain unfinished for more than two years after the same has been commenced.[1]

1. The other eight restrictive covenants provide as follows:

1. Designation of Use

All lots shall be used for single family residential purposes, with not more than one residence on any lot. No lot shall be used for a trade or profession; nor shall anything be done on any lot which may be or may become an annoyance or nuisance to the neighborhood. The Developers, however, may erect a temporary sales office on any lot selected by them, in accordance with the zoning regulations of the City of Austin.

2. Retention of Easements

Easements are reserved as indicated on the recorded plat.

3. Temporary Structures and Garage Apartments

No apartment house, house trailer, tent, shack, garage apartment or other out-building shall be placed, erected, or permitted to remain on any lot or plot, nor shall any structure of temporary character be used at any time as a residence thereon.

4. Separate Garages, Guest Houses, Etc.

A separate garage building, servants' quarters of one story, or a one story guest house not to exceed 600 square feet of floor area will be permitted, provided that such structure or structures must be attached to the main residence by a common wall or by a covered passage-way, provided that the main dwelling be substantially completed prior to said erection and provided further that all other restrictions, covenants, conditions and uses herein are complied with.

5. Minimum Plat Size

No structure shall be erected or placed on any plot which plot has an average width of less than 70 feet. No resubdivision of existing lots shall be made which would create an additional lot or plot; but this shall not prevent the modifying of boundaries of original lots in conformity with the above minimum width. For the purpose of these restrictions, a "plot" shall consist of a lot or lots having a contiguous frontage and having an average width of not less than 70 feet.

6. Size and Construction of Dwellings

All dwellings shall be of recognized standard construction. The dwelling erected on any plot shall cover not less than 1,500 square feet of floor area of which not less than 1,300 square feet shall be in the house proper, exclusive of garage and porches. Ornamental structures, fences and walls are permitted subject to approval in writing by the Developers, or in the alternative by the Architectural Committee referred to under Paragraph No. 8.

\* \* \* \* \* \*

9. General Covenants

These provisions are hereby declared to be conditions, restrictions, uses and covenants running with the land and shall be fully binding on all persons acquiring property in Northwest Hills Section Seven Addition, whether by descent, devise, purchase or otherwise, and every person by the acceptance of title to any lot of this subdivision shall thereby agree to abide by and fully perform the foregoing conditions, restrictions, uses and covenants, which shall be binding until January 1, 1986. On and after January 1, 1986, said conditions, restrictions, uses and covenants shall be automatically extended for successive periods of ten years unless changed in whole or in part by a vote of three-fourth majority of the then owners of the

The Davises' lot adjoins the Huey lot on the canyon rim in an area located within Section 7 of Northwest Hills. The Davises purchased their lot in May, 1976. The record is not precise on this point, but the Hueys apparently purchased their lot in late 1973 or early 1974. The Davises originally proposed to build a house on their lot to be situated twenty-five feet from the rear plot line. It is undisputed that the proposed placement of the house complied with the set-back restrictions in Paragraph 7. However, the developer, Austin Corporation, acting through David B. Barrow, Jr., refused to approve the Davises' plans on the basis that the proposed placement of the house on the lot was inconsistent with the general plan of the subdivision. In refusing approval, Barrow relied on the general authority of Paragraph 8 to refuse approval of a plan "on any ground, including purely aesthetic grounds, which in the sole and uncontrolled discretion" of the developer shall seem sufficient. After negotiations between the parties regarding placement of

the house proved fruitless, the Davises began construction despite the lack of approval of their plans. Thereafter, the Hueys instituted proceedings, in which Barrow and Austin Corporation, intervened seeking to halt construction on the grounds that the disapproval of the plans was a reasonable, good faith exercise of the authority granted by Paragraph 8; that the completion of the house would reduce the value of the surrounding property because of its size and placement; and, the proposed construction would block the views of the Hueys and other neighbors.

The trial court rendered judgment[2] permanently enjoining the Davises from further construction on their lot until the plans had been approved by the Austin Corporation and ordering them to remove a part of the house already constructed. The court of civil appeals affirmed holding *inter alia* that a covenant requiring written approval of building plans by the developer prior to any placement of any structure on a lot in a

lots in Northwest Hills Section Seven Addition, each lot, or plot, to admit of one vote.

*10. Penalty Provisions*

If any person or persons shall violate or attempt to violate any of the above conditions, restrictions, uses and covenants, it shall be lawful for any other person or persons owning any of the lots in Northwest Hills Section Seven Addition to prosecute proceedings at law or in equity against the person or persons violating or attempting such violations to prevent him or them from so doing, or to recover damages for such violations. No act or omission on the part of any of the beneficiaries of the covenants, conditions, restrictions and uses herein contained shall ever operate as a waiver of the operations of or the enforcement of any such covenant, condition, restriction or use.

Invalidation of any one of any part of these conditions, restrictions, uses or covenants by judgment or court order shall in no wise affect any of the others which shall remain in full force and effect.

2. The case was submitted to the jury on two special issues. In answer to Special Issue One, the jury found that the developer, in refusing to approve the Davises' plans, "acted reasonably and in pursuance of a general plan or scheme to insure the development of the subdivision as a residential area of high standards." In answer to Special Issue Two, the jury failed to find that the only reason considered by the developer in refusing to approve the Davises' plans was the effect of the Davises' house upon

the view from the Hueys' house. In connection with Special Issue One, the jury was instructed as follows:

Under the provisions of Paragraph 8 of the restrictive covenants, the developer had the right to refuse to approve plans or plot plan provided that he acted reasonably and provided that his refusal was in pursuance of a general plan or scheme to insure the development of the subdivision as a residential area of high standards.

You are further instructed that the term "general plan or scheme" means that the restrictions employed by the developer are substantially uniform and are imposed upon substantially all of the lots in the restricted area and that such plan or scheme was intended, understood, and relied upon by the developer and substantially all of the purchasers of lots in the subdivision, and has been maintained from the beginning without material departure therefrom.

You are further instructed that by the recordation of the restrictions upon Section 7 of Northwest Hills, subsequent purchasers of lots within the subdivision were charged with knowledge of the content of such restrictions.

In addition, the trial court, upon request, filed extensive findings of fact and conclusions of law. *See Davis v. Huey*, 608 S.W.2d 944, 949–50 (Tex.Civ.App.—Austin 1980).

subdivision was valid and enforceable when exercised reasonably and pursuant to a general plan or scheme; that evidence supported the findings that there was a general plan or scheme created by the developer; and, that the developer acted reasonably in disapproving Davises' plans. 608 S.W.2d 944.

On appeal to this Court, the Davises primarily attack the validity of the developer's exercise of approval authority pursuant to Paragraph 8, contending that the lower courts failed to properly construe the restrictive covenants. The Davises bring additional points complaining of the lower courts' rulings on evidentiary questions, equity matters, the reshuffling of the jury panel, motions for mistrial, a motion for continuance, the taxing of costs, and the application of the doctrine of the "law of the case." However, in light of our holding that the Davises' lot was not burdened by the restriction sought to be imposed, it is unnecessary to consider these points.

It has been stated that housing today is ordinarily developed by subdividers, who, through the use of restrictive covenants, guarantee to the homeowner that his house will be protected against adjacent construction which will impair its value, and that a general plan of construction will be followed. *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P.2d 361, 362 (1969). Restrictions enhance the value of the subdivision property and form an inducement for purchasers to buy lots within the subdivision. *Finley v. Carr*, 273 S.W.2d 439, 443 (Tex. Civ.App.—Waco 1954, writ ref'd). A covenant requiring submission of plans and prior approval before construction is one method by which guarantees of value and of adherence to a general scheme of development can be accomplished and maintained. *Rhue v. Cheyenne Homes, Inc., supra.*

In *Baker v. Henderson*, 137 Tex. 266, 153 S.W.2d 465 (1941), the court set out fundamental rules regarding the application of restrictive covenants in conveyances:

Restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubt should be resolved in favor of the free and unrestrictive use of the premises.

Being in derogation of the fee conveyed by the deed, if there be any ambiguity in the terms of the restrictions, or substantial doubt of its meaning, the ambiguity and doubt should be resolved in favor of the free use of the land. *Settegast v. Foley Bros. Dry Goods Co.*, 114 Tex. 452, 270 S.W. 1014; *Ragland v. Overton*, Tex.Civ.App., 44 S.W.2d 768, 771; *Holliday v. Sphar*, 262 Ky. 45, 89 S.W.2d 327; Thompson on Real Property, sec. 3361; 18 C.J., p. 387, and authorities under notes 19 and 20; 26 C.J.S. Deeds § 163. In *Ragland v. Overton*, supra [44 S.W.2d 771], the court quotes from Thompson on Real Property as follows: "In this country real estate is an article of commerce. The uses to which it should be devoted are constantly changing as the business of the country increases, and as its new wants are developed. Hence, it is contrary to the well-recognized business policy of the country to tie up real estate where the fee is conveyed with restrictions and prohibitions as to its use; and, hence, in the construction of deeds containing restrictions and prohibitions as to the use of the property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions."

*Id.* 153 S.W.2d at 471; *accord, McDonald v. Painter*, 441 S.W.2d 179, 183 (Tex.1969); *Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d 516, 518 (1958); *Settegast v. Foley Bros. Dry Goods Co.*, 114 Tex. 452, 270 S.W. 1014, 1016 (1925).

█ Although covenants restricting the free use of property are not favored, when restrictions are confined to a lawful purpose and are within reasonable bounds and the language employed is clear, such covenants will be enforced. *Wald v. West MacGregor Protective Assoc.*, 332 S.W.2d 338, 343 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.). However, a purchaser is bound by only those restrictive covenants attaching to the property of which he has

actual or constructive notice. One who purchases for value and without notice takes the land free from the restriction. *See, e. g., Hill v. Trigg,* 286 S.W. 182, 184 (Tex. Comm'n App.1926); *Fleming v. Adams,* 392 S.W.2d 491, 496 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.); *Keith v. Seymour,* 335 S.W.2d 862, 871 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.). *See generally,* 20 Am.Jur.2d *Covenants, Conditions and Restrictions* §§ 304–11 (1965).

The majority view with respect to covenants requiring submission of plans and consent prior to construction is that such clauses, even if vesting the approving authority with broad discretionary powers, are valid and enforceable so long as the authority to consent is exercised reasonably and in good faith.[3] Other cases have apparently taken the position that a discretionary approval covenant will not permit the approving authority to impose limitations more restrictive than those specific restrictions affecting the lot owner's use of the property. Under this view, a restriction requiring approval of plans will not justify the imposition of building design or site requirements which are more onerous than those specifically stipulated by other restrictions of record.[4]

We find that the better reasoned view is that covenants requiring submission of plans and prior consent before construction are valid insofar as they furnish adequate notice to the property owner of the specific restriction sought to be enforced.

Therefore, the question before this Court is whether the approval clause set out in Paragraph 8 of the restrictions placed the Davises on notice that their lot was subject to more stringent building site restrictions than those set out in the specific restriction governing set-back and side-lines, Paragraph 7. We hold that as a matter of law Paragraph 8 failed to provide the Davises with notice of the placement restrictions sought to be enforced and therefore the developer's refusal to approve the plans exceeded the authority granted by the restrictive covenants and was void.

In *Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497, 498 (1922), quoting with approval from *Hooper v. Lottman,* 171 S.W. 270, 272 (Tex.Civ.App.—El Paso 1914, no writ), the court stated several rules pertaining to covenants in a subdivision:

> So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deed to purchasers; and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the

**3.** *See, e. g., Hannula v. Hacienda Homes, Inc.,* 34 Cal.2d 442, 211 P.2d 302, 306 (1949); *Rhue v. Cheyenne Homes, Inc.,* 168 Colo. 6, 449 P.2d 361, 363 (1969); *Levin v. Mountain Farms, Inc.,* 22 Conn.Sup. 14, 158 A.2d 493, 496 (1959); *Alliegro v. Home Owners of Edgewood Hills, Inc.,* 35 Del.Ch. 543, 122 A.2d 910, 913 (1956); *Engvalson v. Webster,* 74 So.2d 113, 114 (Fla. 1954); *Winslette v. Keeler,* 220 Ga. 100, 137 S.E.2d 288, 290 (1964); *McNamee v. Bishop Trust Co., Ltd.,* 616 P.2d 205, 211 (Hawaii 1980); *La Vielle v. Seay,* 412 S.W.2d 587, 593 (Ky.1966); *Jones v. Northwest Real Estate Co.,* 149 Md. 271, 131 A. 446, 449 (Md.1925); *Donoghue v. Prynnwood Corp.,* 356 Mass. 703, 255 N.E2d 326, 329 (1970); *West Bloomfield Co. v. Haddock,* 326 Mich. 601, 40 N.W.2d 738, 743 (1950); *Syrian Antiochian Orthodox Archdiocese v. Palisades Associates,* 110 N.J.Super. 34,

264 A.2d 257, 261 (1970); *Boiling Spring Lakes Div. of Reeves Telecom Corp. v. Coastal Services Corp.,* 27 N.C.App. 191, 218 S.E.2d 476, 479 (1975); *Bailey Devel. Corp. v. MacKinnon-Parker, Inc.,* 60 Ohio App.2d 307, 397 N.E.2d 405, 411–12 (1977); *Bersos v. Cape George Colony Club,* 4 Wash.App. 663, 521 P.2d 1217, 1220 (1974).

**4.** *See Lushing v. Riviera Estates Assoc.,* 196 Cal.App.2d 687, 16 Cal.Rptr. 763, 765 (1961); *Bass v. Helseth,* 116 Cal.App.2d 75, 253 P.2d 525, 530 (1953); *Voight v. Harbour Heights Improvement Ass'n,* 218 So.2d 803, 806 (Fla. App.1969). *See also Lake Forest, Inc. v. Drury,* 352 So.2d 305, 307 (La.App.1977); *Hollyhock Farms, Inc. v. Schoenlaub,* 167 N.E.2d 128, 132 (Ohio Ct.C.P.1959).

benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject matter of his purchase.

■ In addition, in order to enforce restrictions based on a general plan or scheme, it is essential that the party seeking to enforce the restrictions on the use of land establish that the purchaser had notice of the limitations on his title. *E. g., McCart v. Cain*, 416 S.W.2d 463, 465 (Tex.Civ.App. —Fort Worth 1967, writ ref'd n. r. e.); *Fleming v. Adams*, 392 S.W.2d 491, 496 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.); *Alexander Schroeder Lumber Co. v. Corona*, 288 S.W.2d 829, 832 (Tex.Civ.App. —Galveston 1956, writ ref'd n. r. e.). Thus, the Hueys have the burden of showing that under the scheme or plan adopted in Section 7, Northwest Hills, it was intended that Paragraph 8, in addition to the specific setback requirements of Paragraph 7, was intended to regulate placement of buildings on all lots within the subdivision, and that the Davises had notice of such scheme, purpose and intention when they purchased the lot in question, for, unless they had such knowledge or notice, it cannot be said that they entered into the scheme or assumed the mutual obligation. *See Monk v. Danna*, 110 S.W.2d 84, 87 (Tex.Civ.App.—Dallas 1937, writ dism'd). Moreover, the meaning of Paragraph 8 and accordingly the nature of the notice thereby furnished to the Davises, is determined at the date of the inception of the general plan or scheme, i. e., in 1965, the date of filing of the restrictions in the Deed Records of Travis County. *See Curb v. Benson*, 564 S.W.2d 432, 433 (Tex. Civ.App.—Austin 1978, writ ref'd n. r. e.); *Green Avenue Apartments v. Chambers*, 239 S.W.2d 675, 686 (Tex.Civ.App.—Beaumont 1951, no writ).

■ It is undisputed that Austin Corporation, by impressing upon all lots in Section 7 a uniform set of restrictive covenants, intended to establish a scheme or plan to insure the development of a "residential area of high standards." There is also little dispute that the developer has implemented in the subdivision a general scheme or plan which has resulted in a residential area of high standards. David B. Barrow, Jr., who, acting on behalf of Austin Corporation, refused to approve the Davises' plans testified that his disapproval was in furtherance of an intention to maintain Section 7 as a residential area of high standards. Barrow testified that his refusal to approve the Davises' plans was essentially based on the placement of the house on the lot because, in his view, the proposed construction was incompatible with the houses in the surrounding area. He stated that in the area of the Davises' lot all the houses are located roughly equidistant from the street, have a rear area or back yard, have only minor variations in size, and are located on their lots so as to avoid interference with neighbors' views. Barrow stated that the Davises' house was incompatible with the surrounding houses because of its larger dimensions, its placement near the rear of the lot, and its obstruction of the views from neighboring houses. However, it is to be emphasized that Barrow also acknowledged that "in the abstract," the Davises' house would not detract from and was not inconsistent with a residential area of high standards. Thus, it is apparent that in the view of Barrow, the Davises' plans were consistent with a residential area of high standards but were incompatible with a general plan or scheme involving the placement of houses on lots in Section 7.

However, there is nothing in the record which will support a holding that a general plan or scheme had been adopted by the developer with respect to placement so as to place the Davises on notice of such restrictions. Barrow testified that at the time the restrictions were filed, the developers had no definite intentions concerning the regulation of placement under Paragraph 8. In addition, other than the specific restrictions

on building site and size, there is no language in any of the covenants, particularly in Paragraph 8, which would place a purchaser on notice that his lot was subject to the placement limitation sought to be enforced.[5] *See Brown v. Wehner*, 610 S.W.2d 168, 170 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n. r. e.). Even more significant is the following testimony of Barrow:

Q  All right. Now, it is true, as I recall it, sir, that you made your decision on where you were going to allow someone to build on Lot 22 at a later date after some other people chose to build their houses up near the fronts of their lots?

A  Yes, sir.

  *    *    *    *    *    *

Q  So the Hueys' choice, you are letting influence what the Davises do, rather than the restrictive covenants, isn't that true?

A  The—yes, sir, all the homes along the street in that area influenced the decision.

Based on the language of the restrictive covenants and Barrow's testimony, it is clear that a general scheme regarding the placement of houses on lots in Section 7 did not exist at the time the restrictions were filed but that the placement restrictions sought to be imposed were in response to developing conditions in the subdivision. Thus, the limitations on the Davises' free use of their property were not based on the restrictive covenants but rather on the voluntary decisions of neighboring lot owners who had the good fortune to construct their houses prior to the Davises. The personal decisions of adjoining lot owners do not appear in the Davises' chain of title or in any other instrument of record. Therefore, the Davises did not purchase with notice of the limitation sought to be imposed and their lot is not burdened by the placement restriction. *See Golf View Improvement Ass'n v. Uznis*, 342 Mich. 128, 68 N.W.2d 785, 787 (1955); *Carranor Woods Property*

*Owners' Ass'n v. Driscoll*, 106 Ohio App. 95, 153 N.E.2d 681, 686 (1957); *see also Wiley v. Schorr*, 594 S.W.2d 484, 487 (Tex.Civ.App. —San Antonio 1979, writ ref'd n. r. e.).

■ A contrary holding would be inconsistent with the basic concept underlying the use of restrictive covenants that each purchaser in a restricted subdivision is subjected to the burden and entitled to the benefit of the covenant. In the instant case, under the theory advanced by the developer, lot owners who built their houses early in the development of the subdivision had a relatively free hand in deciding on placement of their houses on their lots, limited only by the specific restrictions. However, once these houses were constructed the surrounding undeveloped lots were burdened to the extent that placement of houses on these lots could not be inconsistent with the developed lots as determined by the approving authority in the subdivision. Thus, lot owners who built their houses early in the development of the subdivision received the benefits of the covenants but not the burdens. In contrast, the Davises were burdened by the restrictions but essentially will receive no benefits because their house was constructed after other lot owners had decided on placement of their houses. *See Curlee v. Walker, supra.* Thus, the placement restriction sought to be enforced in this cause clearly lacks the mutuality of obligation central to the purpose of restrictive covenants. *See* Thompson on Real Property § 3164 (1962).

Accordingly, we hold that the refusal of the developer to approve the Davises' plans exceeded his authority under the restrictive covenants and was void.

Accordingly, we reverse the judgments of the courts below and render judgment that the Hueys take nothing.

GREENHILL, C. J., and POPE and BARROW, JJ., note their dissent.

5.  In comparison, the Austin Corporation inserted the following clause in the restrictive covenants for Section 12 of Northwest Hills: "The

Developer reserves the right to determine the location and height of all houses located in block W."