GETTYSBURG HOMEOWNERS ASSOCIATION, INC., Appellant,

v.

Sam L. OLSON, Jr., Trustee, et al., Appellees.

No. B14–88–00272–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 3, 1989.

Jeffery H. Ewalt, Houston, for appellant.

Truitt Lively, William T. Little, Stephen Paxson, Houston, for appellees.

Before MURPHY, ROBERTSON and ELLIS, JJ.

## OPINION

MURPHY, Justice.

This is an interlocutory appeal from the denial of a temporary injunction. TEX.CIV. PRAC. & REMS.CODE ANN. § 51.014 (Vernon Supp.1989). Appellant, the Gettysburg Homeowners Association, Inc. ["the association"], filed suit to temporarily and permanently enjoin the appellees, Sam L. Olson, Jr. ["Olson"], Pulte Home Corporation of Texas ["Pulte"] and Truitt Lively, from constructing houses in the subdivision without the approval of the subdivision's Architectural Control Committee ["ACC"]. In two points of error, the association claims that because it showed a probable right of recovery and irreparable interim injury, the trial court abused its discretion when it denied the temporary relief. We affirm.

Gettysburg Section One ["Gettysburg" or "the subdivision"] is a Harris County subdivision. Its plat and "Declaration of Covenants, Conditions and Restrictions" ["restrictive covenants"] were recorded in the records of Harris County in 1978. Section 1 of Article III of the restrictive covenants created the association, a non-profit corporation. Two purposes of the association are to enforce the restrictive covenants and to provide "for the maintenance, preservation and architectural control within the Subdivision." Section 1 of Article II of the restrictive covenants provide for the ACC to be "responsible for enforcing and maintaining the architectural integrity of improvements constructed on Lots and the quality of workmanship and materials utilized in the construction of such improvements in conformance [sic] with the covenants herein." Sections 1–18 of Article VII list the architectual restrictions governing the subdivision.

At the time of the hearing on the association's suit for injunctive relief, twelve different builders had constructed single family houses on slightly more than half of the approximately 222 residential lots in the subdivision and approximately 101 lots remained undeveloped. At some prior point in time, the Gettysburg Corporation had acquired all the undeveloped lots. Although it retains title to sixty-seven of the undeveloped lots, the corporation lost ownership of several of them in 1987 after an FDIC foreclosure. Sam L. Olson, Jr., purchased the lots at foreclosure and sold some to Pulte, which apparently has an option to purchase other lots in Gettysburg.

As required by the restrictive covenants, Pulte submitted plans for the construction of six homes to the association and the ACC in November 1987. Early in January 1988, the ACC rejected the plans because "in keeping with the overall character and aesthetics of [the subdivision], replicated construction of the same basic floor plan for a single family residential dwelling is prohibited." The association filed this action after Pulte began building a house on Lot 1, Block 7 of Gettysburg. The trial court refused the association's request to temporarily enjoin the appellees from beginning or continuing construction of houses, or selling lots to Pulte, without the approval of the ACC "and/or ... [without conformity] to the *common scheme of design and development of a custom home subdivision* (emphasis added)." The record contains no request for findings of

fact and conclusions of law and the trial court filed none.

Although the association sought both temporary and permanent injunctions, the only issue before the trial court on a request for temporary injunction is whether the applicant is entitled to preserve "the status quo of the subject matter of the suit pending trial on the merits." *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978) ["*Davis I*"], *aff'd as reformed after remand,* 608 S.W.2d 944 (Tex.Civ.App.—Austin 1980) *rev'd,* 620 S.W.2d 561 (Tex.1981) ["Davis II"]; [1] *Valero Transmission Co. v. Mitchell Energy Corp.,* 743 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1987, no writ). To warrant issuance of a temporary injunction, an applicant need only show a probable right to recover at trial and a probable interim injury should the court fail to grant the temporary relief. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Camp v. Shannon,* 162 Tex. 515, 518, 348 S.W.2d 517, 519 (1961).

Whether the trial court grants or denies the request for preliminary relief, the only question for our review is whether the trial court abused its discretion. *Harris County v. Gordon,* 616 S.W.2d 167, 168 (Tex. 1981); *Brooks v. Expo Chem. Co.,* 576 S.W.2d 369 (Tex.1979); *Davis I,* 571 S.W.2d at 862. Since we may not assume that the evidence presented at the preliminary hearing would be the same at the trial of the permanent injunction, we may not infringe on the association's right to jury trial by prematurely addressing the issue of the association's right to a *permanent* injunction. *Davis I,* 571 S.W.2d at 862. In this case, as in *Davis I,* the lack of findings of fact and conclusions of law demands that we affirm the order on any legal theory supported by the evidence. *Id.*

To support its contention that it demonstrated a probable right of recovery at the trial of its permanent injunction case, the association maintains the "undisputed facts" show that Gettysburg was developed "as an area of custom built homes whose character is one of 'uniqueness' and 'one of a kind' homes." In addition to the provisions of the restrictive covenants to which we have already referred, Section 2 of Article II further provides, in part:

SECTION 2. POWERS OF THE COMMITTEE. No building or other improvements shall be constructed in the Subdivision, and no exterior alteration therein shall be made until the site plan, the schematic plan for landscaping and lighting, and the final working plans and specifications have been submitted to and approved in writing by the Committee as to conformity and harmony of external design and location in relation to surrounding structures and topography and as to quality of workmanship and materials.

The Committee shall have the right to specify architectural and aesthetic requirements for building sites, minimum setback lines, the location, height, and extent of fences, walls, or other screening devices, the orientation of structures with respect to streets, walks, paths and structures on adjacent property and a limited number of acceptable exterior materials and finishes that may be utilized in construction or repair of improvements. The Committee shall have full power and authority to reject any plans and specifications that do not comply with the *restrictions herein imposed or that do not meet its minimum construction or architectural design requirements or that might not be compatible with the overall character and aesthetics of the Subdivision.*

**1.** In *Davis I,* the supreme court reinstated a trial court order denying a temporary injunction and held that the appellate court exceeded the permissible scope of review because it addressed the merits of the underlying lawsuit, an attempt to permanently enjoin construction of a residence. 571 S.W.2d at 862. The supreme court remanded the case for entry of the temporary injunction the Hueys originally sought. After a

jury trial on the merits, the trial court granted the permanent injunction and entered extensive findings of fact and conclusions of law. The appellate court affirmed. 608 S.W.2d 944 (Tex. Civ.App.—Austin, 1980). In addressing the merits of the case in *Davis II,* the supreme court rendered a take nothing judgment against the Hueys. 620 S.W.2d 561.

No construction of a building, structure, fence, wall, other improvements shall be commenced until the contractor designated to perform such construction have [sic] been approved in writing by the Committee. (emphasis added).

In 1987, the legislature added specific provisions governing restrictive covenants to the Texas Property Code. TEX.PROP. CODE ANN. § 202.001(4) (Vernon Supp.1989) defines "restrictive covenant" as "any covenant, condition, or restriction *contained in* a dedicatory instrument, whether mandatory, permissive, or administrative (emphasis added)." Section 202.003 mandates that such covenants be liberally construed "to give effect to their purposes and intent." Further, Section 202.004(a) creates a presumption that a property owners' association or other representative exercises discretionary authority reasonably "unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." *Cf., Davis II*, 620 S.W.2d at 566 (restrictive covenants which require advance submission of plans and consent prior to construction are valid if they "furnish adequate notice to the property owner of the specific restriction sought to be enforced").

The association does not seriously contend that the restrictive covenants mandate that Gettysburg houses be "custom" since the covenants do not use that term. Rather, the association maintains that the ACC has the discretionary authority, pursuant to the restrictive covenants, to approve only "custom" houses since those are the only houses which could be "compatible with the overall character and aesthetics of the [s]ubdivision." The trial court could have relied on TEX.PROP.CODE ANN. § 202.004(a) when it denied temporary relief, based on its having concluded, by a preponderance of the evidence presented at the preliminary hearing, that the ACC exercised its authority in an arbitrary or capricious manner in view of the conflicting testimony defining "custom home." For example, while the ACC rejected Pulte's plans because they "replicated" the same basic plan, one witness conceded under cross examination that the floor plan of a purportedly "custom" house could be identical to another's. A trial court does not abuse its discretion when its decision rests on conflicting evidence. *Davis I*, 571 S.W. 2d at 862. Alternatively, the trial court may have concluded, for purposes of the temporary injunction hearing, that the ACC impermissibly imposed additional restrictions on Pulte than those set out in the restrictive covenants filed in 1978. *See Davis II*, 620 S.W.2d at 566–67; *accord, Whiteco Metrocom, Inc. v. Indus. Properties Corp.*, 711 S.W.2d 81, 82 (Tex.App.— Dallas 1986, writ ref'd n.r.e.) (approval covenants cannot add to or change existing restrictive covenants).

The association argues, in the alternative, that the evidence presented in the preliminary hearing showed that subsequent development of the subdivision, of which the appellees had "constructive notice," clearly "defined" it as one consisting only of "custom" houses. Here too, the *Davis II* decision, although it is distinguishable as an appeal from an order granting a permanent injunction, provides a basis for the decision of the trial court to deny preliminary relief in the instant case. *Davis II* rejected a similar proposition concerning property setbacks and held that the discretionary review authority could not enforce a more restrictive setback based on development which occurred *after* filing of the original restrictive covenants because the date of filing of the original restrictive covenants determines notice. 620 S.W.2d at 566–67.

While we express no opinion on the likelihood of the association's success on the merits of its suit for permanent injunctive relief, we hold that the record on its application for a temporary injunction supports several legal theories on which the trial court could have concluded that the association had not demonstrated probable success on the merits. We further hold that by offering only speculative testimony of *future* loss of market value, the association failed to demonstrate *interim* injury should the temporary injunction fail to issue. Finding no basis for the association's

contention that the trial court abused its discretion, we overrule its two points of error and affirm the order of the trial court.