ACCEPTED
06-15-00031-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/11/2015 3:37:01 PM
DEBBIE AUTREY
CLERK

No. 06-15-00031-CV

**IN THE**
**COURT OF APPEALS FOR THE**
**SIXTH SUPREME JUDICIAL DISTRICT OF TEXAS**
**AT TEXARKANA, TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/14/2015 9:01:00 AM
DEBBIE AUTREY
Clerk

**DOUGLAS B. MOSELEY,**

**Appellant,**

**vs.**

**SHERRIE ARNOLD,**

**Appellee.**

**Appeal from the 71st District Court**
**of Harrison County, Texas**
**Honorable Brad Morin**

**APPELLANT'S BRIEF**

*Oral Argument Requested*

i

**TO THE HONORABLE COURT OF APPEALS:**

Douglas B. Moseley (the "Appellant") files this Appellate Brief seeking review of the Final Judgment entered April 7, 2015 by the 71st Judicial District Court of Harrison County, Texas below, including the Order Denying Plaintiff's Motion for Partial Summary Judgment entered November 18, 2014 and the Order on Defendant's Motion for Partial Summary Judgment entered December 29, 2014 upon which it relied.

## IDENTITY OF THE PARTIES AND COUNSEL

**Appellant:**      Douglas B. Moseley

**Counsel for Appellant:**   Gerrit M. Pronske
State Bar No. 16351640
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE GOOLSBY & KATHMAN, P.C.
15305 Dallas Parkway, Suite 300
Addison, Texas 75001
(214) 658-6500 – Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**Appellee:**       Sherrie Arnold

**Counsel for Appellee:**    Deane A. Searle
Searle & Searle, PC
P.O. Box 910
305 West Rusk Street
Marshall, Texas 75671
Email: dsearle54@gmail.com

# TABLE OF CONTENTS

INDEX OF AUTHORITIES............................................................................................... v

STATEMENT OF THE CASE........................................................................................... 1

STATEMENT REQUESTING ORAL ARGUMENT .................................................... 1

ISSUES PRESENTED....................................................................................................... 2

STATEMENT OF FACTS ................................................................................................ 3

    Plaintiff's Sale of the 5 Acres to Gorman................................................................ 3

    Subsequent Purchasers of the 5 Acres Fail to Redevelop the the Property for its Original Business Purpose. ................................................................................................... 5

    New Opportunity for Development of the 6.3 Acres. ............................................. 7

    Summary Judgment in the Trial Court ................................................................... 8

SUMMARY OF THE ARGUMENT ............................................................................ 11

ARGUMENT AND AUTHORITIES ............................................................................ 12

    This Court Must Conduct a *De Novo* Review of the Final Judgment and Supporting November Summary Judgment and December Summary Judgment Orders. ............................................. 12

    Defendant Lacks Standing to Enforce the Deed Restriction as a Matter of Law. ..................... 13

    The Final Judgment Ignores Genuine Issues of Material Fact Related to Application of the Doctrine of Changed Condition.......................................................................... 17

SUMMARY .................................................................................................................... 20

# INDEX OF AUTHORITIES

*Cases*

*Abarnathy v. Adou*, 49 S.W.2d 476 (Tex. Civ. App. – Beaumont 1932, no writ) ........................ 18

*Aull v. Kraft*, 286 S.W.2d 460 (Tex. Civ. App.—Waco 1956, writ ref'd n.r.e.) .......................... 13

*Bethea v. Lockhart*, 127 S.W.2d 1029 (Tex. Civ. App. – San Antonio 1939), *writ refused* ........ 18

*City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex. 1979) .......................... 12

*Clear Lake Apartments, Inc. v. Clear Lake Utils. Co.*, 537 S.W.2d 48, (Tex. Civ. App.--Houston [14th Dist.] 1976, *writ granted), aff'd at* 549 S.W.2d 385 (Tex. 1977) ..................................... 16

*Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist. Of Harris*, 438 S.W.3d 661 (Tex. App. – Houston [1st Dist.] 2014, *reh'g overruled* (July 10, 2014), *review denied* (Dec. 19, 2014)) ................................................................................................................................. 14

*Davis v. Canyon Creek Estates Homeowners Ass'n.*, 350 S.W.3d 301 (Tex. App. – San Antonio 2011, pet. denied) ................................................................................................................... 18

*Davis v. Huey*, 620 S.W.2d 561 (Tex. 1981) ................................................................................ 14

*Gonzalez v. City of Houston*, 01-00-01195-CV, 2002 WL 221586 (Tex. App.—Houston [1st Dist.] Feb. 14, 2002, no pet.) ........................................................................................... 14, 16

*Green Ave. Apartments v. Chambers*, 239 S.W.2d 675 (Tex. Civ. App. – Beaumont 1951) ....... 13

*Green v. Gerner*, 289 S.W. 999 (Tex. Comm'n App. 1927) ......................................................... 13

*Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632 (Tex.1987) ....................................... 13

*Jim Walter Homes v. Youngtown, Inc.,* 786 S.W.2d 10 (Tex. App.--Beaumont 1990, *no writ*) ... 16

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009) .............. 12

*Montgomery v. Kennedy*, 669 S.W.2d 309 (Tex. 1984) ............................................................... 12

*MPH Production Co., Inc. v. Smith*, 06-11-00085-CV, 2012 WL 1813467 (Tex. App. – Texarkana May 18, 2012, no pet.) ................................................................................... 13, 14

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985) ..................................................... 12

*Oldfield v. City of Houston*, 15 S.W.3d 219 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ........................................................................................................................................... 20

*Overton v. Ragland*, 54 S.W.2d 240 (Tex. Civ. App. – Amarillo 1932), *writ dismissed* ............. 18

*Panhandle & S.F. Ry. Co. v. Wiggins,* 161 S.W.2d 501  (Tex.Civ.App.-Amarillo 1942, writ ref'd w.o.m.) ................................................................................................................ 13

*Pilarcik v. Emmons*, 966 S.W.2d 474 (Tex. 1998) .......................................................... 12, 13, 14

*Ragland v. Overton*, 44 S.W.2d 768 (Tex. Civ. App. – Amarillo 1931, no writ) ........................ 18

*Scaling v. Sutton*, 167 S.W.2d 275  (Tex. Civ. App. – Fort Worth 1942), *writ refused W.O.M.* (May 26, 1943) ................................................................................................ 13, 18

*Silver Spur Addition Homeowners v. Clarksville Seniors Apts.,* 848 S.W.2d 772 (Tex.App.-Texarkana 1993, writ denied) ................................................................................ 14

*Ski Masters of Texas, LLC v. Heinemeyer*, 269 S.W.3d 662 (Tex. App. – San Antonio 2008, no pet) ...................................................................................................................... 12, 13

*Tarrant Appraisal Dist. v. Colonial County Club,* 767 S.W.2d 230 (Tex. App.--Fort Worth 1989, *writ denied*) ............................................................................................................ 16

*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860 (Tex. 2010) ......................................................... 12

*Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657 (Tex. App. – Austin 2005, no pet.) ................................................................................................ 13

*Wayne Harwell Props. v. Pan Am. Logistics Ctr.,* 945 S.W.2d 216 (Tex.App.-San Antonio 1997, writ denied) ............................................................................................................ 13

*Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903 (Tex.1982) ................................. 13

*Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex. 1975) ........................... 12

*Wilmoth v. Wilcox*, 734 S.W.2d 656 (Tex. 1987) ........................................................... 13, 14, 16

*Statutes*

Tex. Prop. Code Ann. § 202.003(a) .................................................................................... 13

*Rules*

Tex. R. Civ. P. 166a(c) ...................................................................................................... 12

*Treatises*

12 Tex.Jur. 172-174, Covenants and Conditions §108 ................................................................. 18

14 Am.Jur. 644-646, Covenants, Conditions and Restrictions §§ 295-298 .................................. 18

2 American Law of Property §9.38 ............................................................................................ 18

5 Restatement of the Law of Property §561 ................................................................... 18

**STATEMENT OF THE CASE**

| | |
|---|---|
| **Nature of the Case:** | This is an appeal from the Final Judgment entered by the trial court (R.345), relying upon two separate partial summary judgment orders favoring the Defendant (R.240-1), concerning a declaratory judgment suit to determine the enforceability of a deed restriction burdening property of the Plaintiff (R.4). |
| **Trial Court:** | The Honorable Brad Morin<br>71st District Court<br>Harrison County, Texas |
| **Course of Proceedings:** | Summary Judgment |
| **Trial Court Disposition:** | Final Judgment entered for Defendant (R.345) |

**STATEMENT REQUESTING ORAL ARGUMENT**

Plaintiff respectfully requests this Court to set the matter for oral argument. This case relates to a 30-year old real estate transaction in connection with the transfer of an operating business with a going concern value and presents legal questions that may be of first impression to this Court or ask this Court to extend the application of an area of the law on the basis of compelling economic policy reasons. As such, Plaintiff submits that oral argument will aid this Court in its decisional process.

## ISSUES PRESENTED

I.      Whether the Trial Court erred in entering Final Judgment in favor of Defendant, relying upon the November Partial Summary Judgment Order and the December Partial Summary Judgment Order.

II.     Whether the Trial Court erred in entering the November Partial Summary Judgment Order.

III.    Whether the Trial Court erred in entering the December Partial Summary Judgment Order.

IV.     Whether a successor to grantee may enforce a deed restriction against another tract when the terms of the deed restriction clearly and unambiguously identify the specific individual who may have standing to enforce the deed restriction and the successor to grantee has not received an assignment of the deed restriction from the individual specifically identified.

V.      Whether a successor to grantee is estopped from enforcing a deed restriction originally agreed to by grantee to prevent grantor from operating a competing business when the original business located on grantee's estate is completely destroyed and grantee and his successors do not redevelop grantee's estate for its original business purpose.

VI.     Whether the doctrine of changed conditions may provide grantor relief from a deed restriction prohibiting grantor from building and operating a competing business on grantor's estate when the original business located on grantee's estate is completely destroyed and grantee and his successors do not redevelop grantee's estate for its original business purpose for almost thirty years.

## STATEMENT OF FACTS

### A. Plaintiff's Sale of the 5 Acres to Gorman

On or about July 31, 1985, Plaintiff, as seller, entered into a Contract of Sale (the "Contract of Sale") with Robert T. Gorman ("Gorman"), as purchaser, whereby Plaintiff contracted to sell Gorman a 5 Acre tract of property at the Southeast corner of the intersection of Interstate 20 and State Highway 43 near Marshall, Harrison County, Texas, together with a business known as Moseley's Truck Stop (the "5 Acres"). (R.68-75).

In consideration of the mutual promises contained by the parties to the Contract of Sale, and as specifically provided by Paragraph 22 of the Contract of Sale, a Restrictive Covenant Agreement (the "Deed Restriction") was entered into by and between Plaintiff and Gorman relating to a 6.3 acre track of land (not a part of Gorman's purchase) owned and retained by Plaintiff on the Northeast corner of the intersection of Interstate 20 and State Highway 43 near Marshall, Harrison County, Texas (the "6.3 Acres"). The 6.3 Acres is across Interstate 20 from the 5 Acres. The Deed Restriction is recorded in the Deed Records of Harrison County, Texas at Volume 1083, Page 399. (R.76-78).

At the closing of the sale of the 5 Acres contemplated by the Contract of Sale, Plaintiff:

- Delivered a Warranty Deed (the "Warranty Deed") to Gorman conveying title of the 5 Acres to Gorman; (R.79-81) and

- Delivered the Deed Restriction to Gorman concerning the retained 6.3 Acres. (R.76-78).

First Interstate Bank of Dallas, Texas ("Lender") financed the sale of the 5 Acres to Gorman, and held the purchase money first lien against the 5 acres beginning September 17, 1985, to secure a Promissory Note executed in favor of the Lender by Gorman. In 1988, Gorman defaulted on his loan to Lender, and on December 6, 1988, the 5 Acres was sold by foreclosure/trustee sale to Lender. (R.62).

3

Paragraph 20 of the Contract of Sale provided that in the event that the 5 Acres and/or the truck stop business located on the 5 Acres was sold to another party of which Gorman was not a participant, Plaintiff was entitled to:

- notice of such sale; and

- exercise a right of first refusal to purchase the 5 Acres. (R.73).

The sale of the property by trustee's deed on December 6, 1988 was to an entity with which Gorman was not a participant, thereby triggering the terms of Paragraph 20 of the Contract of Sale. (R.62).

Despite the clear terms of Paragraph 20 of the Contract of Sale, and in clear violation of Paragraph 20 of the Contract of Sale, neither Gorman nor the Lender:

- Notified Plaintiff of the impending sale of the 5 Acres; nor

- Permitted Plaintiff to exercise his contractual right of first refusal to purchase the 5 Acres. (R.62).

The right of first refusal contained in Paragraph 20 of the Contract of Sale was a central and integral part of the Contract of Sale regarding the 5 Acres, and was heavily negotiated by the parties. (R.62).

This was especially true because Gorman was being permitted to purchase a business (Moseley's Truck Stop) that contained Plaintiff's last name in its title. In fact, Plaintiff even licensed the use of his own name "Douglas Moseley" to Gorman to be used on the 5 Acres. Sale of Moseley's Truck Stop to a third party without notification to Plaintiff permitted the sale of a business with his name on it to a strange set of subsequent parties (ultimately including Defendant) without Plaintiff's ability to stop the purchase by being given the first refusal rights guarantied by Paragraph 20 of the Contract of Sale. (R.62-63).

4

As a matter of law, failure of Gorman to a) notify Plaintiff of the sale of the 5 Acres, and b) permit Plaintiff to exercise the right of first refusal as to the 5 Acres, constituted a material breach of the Contract of Sale, and excused any continuing performance by Plaintiff on the Contract of Sale, including any duty to further restrict the use of the 6.3 Acres.

Lender did not foreclose on the Deed Restriction because Lender never had any lien, assignment or security interest in and to the Deed Restriction that could have been foreclosed. The Lender never obtained any assignment or pledge of the Deed Restriction from Gorman and never requested or obtained one from Moseley. (R.63).

A fire permanently destroyed the truck stop, which has been closed more than 24 years. The truck stop was never re-opened, and has never been used as a truck stop or any other fuel outlet in over 24 years. (R.63).

**B. Subsequent Purchasers of the 5 Acres Fail to Redevelop the the Property for its Original Business Purpose.**

After Lender foreclosed the 5 Acres, Lender subsequently sold the 5 Acres to Idlewild Company (the second sale) on December 6, 1988. Idlewild Company never obtained any assignment of the Deed Restriction, purchasing only the 5 Acres. No notice of the sale to Idlewild Company was ever given to Plaintiff, nor any ability to exercise his right of first refusal. (R.63).

Idlewild Company sold the 5 Acres to Ata Rahimi (the third sale) on October 25, 1995. No notice of the sale to Ata Rahimi was ever given to Plaintiff, nor any ability to exercise his right of first refusal. (R.63).

Ata Rahimi sold the 5 Acres to Ata and Diana Rahimi (the fourth sale) on December 20, 2000. Ata Rahimi never obtained any assignment of the Deed Restriction, purchasing only the 5

Acres. No notice of the sale to Diana Rahimi was ever given to Plaintiff, nor any ability to exercise his right of first refusal. (R.63-64).

Ata and Diana Rahimi sold the 5 Acres to Richie and Tommy Arnold (the fifth sale) on December 21, 2000. Richie and Tommy Arnold never obtained any assignment of the Deed Restriction, purchasing only the 5 Acres. No notice of the sale to Richie and Tommy Arnold was ever given to Plaintiff, nor any ability to exercise his right of first refusal. (R.64).

Defendant Sherrie Arnold was married to Tommy Arnold and succeeded to Tommy Arnold's ownership position in and to the 5 Acres following his death. Sherrie Arnold then purchased all of Richie Arnold's ownership position in and to the 5 Acres (the sixth sale), and is now the 100% owner of the 5 Acres. No notice of the sale/transfer to Defendant Sherrie Arnold was ever given to Plaintiff, nor any ability to exercise his right of first refusal. (R.64).

When Sherrie Arnold succeeded to the interests of Tommy and Richie Arnold, she did not obtain any assignment of the Deed Restriction from any of her many predecessors in interest and ownership of the 5 Acres. (R.64). In fact, Gorman never assigned the Deed Restriction to any party, including Defendant. (R.64).

None of the above subsequent purchasers, from Gorman to Arnold, have redeveloped the 5 Acres for its original business purpose, the operation of a truck stop. The 5 Acres currently sits as undeveloped real estate with the old sign for Moseley's Truck Stop at an exit along a major interstate highway opposite Plaintiff's raw, undeveloped 6.3 Acre tract.

The precise language of the Deed Restriction provides that the Deed Restriction was only "for the benefit of Gorman and his wife, Nancy S. Gorman (the "Gormans"), and successors and assigns" of the Deed Restriction. (R.77). The Warranty Deed does not in any way reference the Deed Restriction. There are no successors or assigns to the Deed Restriction. (R.64).

6

Defendant, the sixth purchaser of the 5 Acres originally sold by the Warranty Deed, is not a successor or assignee of the Deed Restriction. (R.65).

### C. New Opportunity for Development of the 6.3 Acres.

On or about May 22, 2013, Reeves Enterprises, LLC ("Reeves") placed a Contract on the 6.3 Acres, attempting to purchase the 6.3 Acres from Plaintiff and his wife for a total purchase price of $850,000 (the "Reeves Contract"). (R.65, 82-95).

During the term of the Reeves Contract, Arnold asserted the right to block the proposed development of Plaintiff's 6.3 Acres on the basis of the Deed Restriction, causing the title company handling the sale transaction between Plaintiff and Reeves to declare an exception to Title. This exception has created a wrongful cloud on the title and enjoyment to the 6.3 Acres and has prevented Plaintiff from closing the Reeves Contract. (R.65).

When Plaintiff entered into the Reeves Contract, he contacted Defendant Arnold to obtain a record release of the Deed Restriction. She was unaware at that time (and at the time that she purchased the 5 Acres) of the existence of the Deed Restriction, but has since improperly used the restriction to intentionally block the Reeves Contract from closing. The Harrison County Tax Appraisal District shows the total market value of the 5 Acres to be only $49,500. (R.65).

Since learning of the Deed Restriction and effectively blocking the sale by Plaintiff of the 6.3 Acres improperly, Defendant Arnold has put the 5 Acres on the market for sale, hoping to keep Plaintiff's 6.3 Acres tied up while she sells her property with the unfair advantage of the Deed Restriction, which has futily protected a non-existent truck stop for over 20 years. (R.65).

As Plaintiff attempted to have Arnold retract her position with respect to the Deed Restriction, the terms of the Reeves Contract were extended several times to give Arnold an opportunity to clear up the wrongful assertion of the Deed Restriction. The most recent of those

extensions of the Reeves Contract expired on February 15, 2014, and the Reeves Contract has now expired. (R.65-66).

The truck stop that the Deed Restriction intended to protect has been closed and out of business for over 24 years. During this time the truck stop completely burned down. After the truck stop burned down, the owner of the 5 Acres destroyed all remains of the truck stop business, and removed all existing remnants of the truck stop, including all remaining structures and underground fuel tanks. The 5 Acres has been sold six times since the Deed Restriction was entered into and since the truck stop business that the Deed Restriction tried to protect burned down. (R.66).

### D. Summary Judgment in the Trial Court

Plaintiff filed its Original Petition for Declaratory Judgment, Tortious Interference with Contractual and Business Relations, and for Attorneys' Fees against Defendant on March 14, 2014. (R.4) Based on the facts set forth above, Plaintiff sought declaration of unenforceability of the Deed Restriction so that Plaintiff could close his sale of the 6.3 Acres with Reeves. Defendant timely responded with a general denial entered April 14, 2014. (R.36)

Plaintiff moved for partial summary judgment ("Plaintiff's Summary Judgment Motion") requesting the Trial Court to enter declaratory judgment in favor of Plaintiff finding that the Deed Restriction was unenforceable because Defendant lacked standing to enforce the Deed Restriction. (R.38) In addition to arguments supporting the proposition that Defendant lacked standing to enforce the Deed Restriction, Plaintiff also argued that the doctrine of changed conditions relieved Plaintiff's 6.3 Acres from the burden of the Deed Restriction. (R.56-8) In support of his Summary Judgment Motion, Plaintiff submitted his own Affidavit (the "Moseley Affidavit") setting forth the history of his transaction with Gorman for the sale of the 5 Acres and the original intent of Plaintiff and Gorman concerning the Deed Restriction. (R.60) Plaintiff

specifically affirmed that "[t]he precise language of the Deed Restriction provides that the Deed Restriction was only 'for the benefit of Gorman and his wife, Nancy S. Gorman (the "Gormans"), and successors and assigns' of the Deed Restriction." (R.64) The Moseley Affidavit also sets forth facts, from Plaintiff's own knowledge, establishing that there has been no operational truck or fuel stop on the 5 Acres for over 24 years, that the truck stop was destroyed by fire, and that its remaining improvements were removed from the 5 Acres. (R.66) Defendant objected to Plaintiff's Summary Judgment Motion, but did not provide any competing summary judgment evidence in support of its objection. (R.107) The Trial Court conducted a hearing on Plaintiff's Motion for Summary Judgment on October 3, 2014, and entered its Order Denying Plaintiff's Motion for Partial Summary Judgment on November 18, 2014 (the "November Summary Judgment Order") without a memorandum opinion. (R.240)

On October 3, 2014, the same date as the hearing on Plaintiff's Motion for Summary Judgment, Defendant filed her First Amended Answer and Counterclaim for Declaratory Judgment (R.194) and Counter-Motion for Traditional and No Evidence Partial Summary Judgment ("Defendant's Summary Judgment Motion") (R.148). Defendant requested the Trial Court to enter summary judgment declaring that Defendant was entitled to enforce the Deed Restriction and that the 6.3 Acres was not relieved from the burden of the Deed Restriction. (R.152-8) Defendant also sought summary judgment finding that the changed circumstances doctrine did not apply as a matter of law, arguing that "Plaintiff's contention that the 5 Acres has not been used as a truck stop since the burning of the one owned by Gorman has no bearing on the benefit to Defendant." (R.159) Defendant stated simply, without any explanation or reasoning, that "the changes set forth for the proposition that changes in the restricted area or the immediately surrounding area [including the foreclosure of the original Moseley's Truck Stop

9

and the failure of Gorman or any other subsequent owner of the 5 Acres to redevelop the truck stop] fail to make it so that it is no longer possible to secure to a substantial degree the benefits sought to be realized by the owner." (R.160) Similarly, Defendant's affidavit attached in support of her Summary Judgment Motion (the "Arnold Affidavit") states simply, without any supporting facts or reasoning, that "[t]he Restrictive Covenant makes my five (5) acre tract or parcel of land more valuable as a result of having no competition for a truck and fuel stop directly across Interstate 20." (R.166) Defendant provides no explanation why she has not yet developed a truck stop on her 5 Acre tract, despite owning or controlling the property through marriage since as early as 2000, why the value of her tract is enhanced by the Deed Restriction notwithstanding that she has never operated a truck stop on her tract, or that she has any future plans of developing a truck stop on her tract that would realize the inchoate value of her tract for that purpose. The Arnold Affidavit therefore raised more material fact issues than it resolved.

Plaintiff incorporated his legal arguments and briefing in support of Plaintiff's Summary Judgment Motion in response to Defendant's Summary Judgment Motion. (R.213-2) The Trial Court considered the pleadings related to Defendant's Summary Judgment Motion on submission and entered its Order on Defendant's Counter-Motion for Partial Summary Judgment granting Defendant's Motion for Summary Judgment on December 29, 2014 (the "December Summary Judgment Order"). (R.241) The Trial Court set a final trial in the matter to determine the assessment and amount of attorneys' fees in the matter for February 18, 2015 and thereafter entered Final Judgment for Defendant in reliance upon the November and December Summary Judgment Orders. (R.245) Plaintiff timely filed his Notice of Appeal of the Final Judgment on May 7, 2015. (R.247)

10

## SUMMARY OF THE ARGUMENT

The transactional documents conveying Plaintiff's interest in the truck stop to Gorman make clear that the intention of the parties for the existence of the Deed Restriction was to protect the value of Moseley's Truck Stop. As such, the Deed Restriction establishes that the *only* parties with the standing to enforce the Deed Restriction are Gorman, his successors, and assigns to the Deed Restriction - the parties that were expected to operate Moseley's Truck Stop following closing of the transaction. Defendant freely admits that she not meet any of the requirements explicitly set forth by the original parties in the Deed Restriction for standing to enforce, so the Trial Court erred as a matter of law in entering Final Judgment in Defendant's favor.

As a consequence of the shutting, destruction, and failure to redevelop the truck stop, all of the business reasons for the restrictive covenant have been completely abandoned. Gorman's business and the 5-acre tract were foreclosed in 1988. The truck stop was shut down. Everything on the 5-acre tract burned down, and what was not burned down was torn down and removed, including all of the underground tanks. Nothing was ever built on the 5-acre tract again. The 5-acre tract was sold six times, each time to a buyer that did not redevelop the property for its original business purpose. These dramatically changed circumstances have eliminated all business reasons for the original existence of a restrictive covenant – to protect Gorman from competition against Moseley's Truck Stop sold to Gorman in 1985. The Trial Court erred in failing to conduct a hearing on the merits of the material facts of the case in connection with the doctrine of changed circumstances, so the Final Judgment must be reversed on this basis as well.

## ARGUMENT AND AUTHORITIES

### A. This Court Must Conduct a *De Novo* Review of the Final Judgment and Supporting November Summary Judgment and December Summary Judgment Orders.

This appeal requests this Court to review the Trial Court's entry of Final Judgment in favor of Defendant on the basis of the November Summary Judgment and December Summary Judgment in connection with the construction and enforcement of a deed restriction limiting Plaintiff's use of his property. An appellate court reviews a trial court's summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The movant for summary judgment bears the burden to demonstrate that no genuine issue of material fact exists and that judgment should be rendered in its favor as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-9 (Tex. 1985). Summary judgment evidence is construed in the light most favorable to the nonmovant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548-9. *See also Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589, 592-3 (Tex. 1975); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex. 1979).

A trial court's construction of a restrictive covenant is also reviewed *de novo*. *Ski Masters of Texas, LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App. – San Antonio 2008, no pet). Similarly, standing to enforce a restrictive covenant is a legal question reviewed *de novo*. *Id*. Appellate courts apply the general rules of construction of contracts when construing a restrictive covenant. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). This Court should construe the Deed Restriction in light of the circumstances present when the parties entered into the

agreement, with the primary intent to ascertain and give effect to the intention of the parties as expressed in the instruments. *Id*.; *Ski Masters of Texas, LLC*, 269 S.W.3d at 667.

## B. Defendant Lacks Standing to Enforce the Deed Restriction as a Matter of Law.

Under Texas law, a covenant runs with the land when (1) it touches and concerns the land; (2) it relates to a thing in existence or specifically binds the parties and their assigns; (3) the original parties to the covenant intend it to run with the land; and (4) the successor to the burden has notice. *Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635 (Tex.1987); *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 665-66 (Tex. App. – Austin 2005, no pet.); *see also Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 911 (Tex.1982); *MPH Production Co., Inc. v. Smith*, 06-11-00085-CV, 2012 WL 1813467, at \*2 (Tex. App. – Texarkana May 18, 2012, no pet.); *Wayne Harwell Props. v. Pan Am. Logistics Ctr.,* 945 S.W.2d 216, 218 (Tex.App.-San Antonio 1997, writ denied); *Panhandle & S.F. Ry. Co. v. Wiggins,* 161 S.W.2d 501, 504–05 (Tex.Civ.App.-Amarillo 1942, writ ref'd w.o.m.).

Texas courts are in accord that a suit for the enforcement of a restrictive covenant is maintainable only by one for whose benefit the covenant was intended. *Scaling v. Sutton*, 167 S.W.2d 275, 278-9 (Tex. Civ. App. – Fort Worth 1942), *writ refused W.O.M.* (May 26, 1943); *Green Ave. Apartments v. Chambers*, 239 S.W.2d 675 (Tex. Civ. App. – Beaumont 1951); *Aull v. Kraft*, 286 S.W.2d 460, 461 (Tex. Civ. App.—Waco 1956, writ ref'd n.r.e.); *Green v. Gerner*, 289 S.W. 999, 1000 (Tex. Comm'n App. 1927). Texas courts are to construe a restrictive covenant liberally to "give effect to its purposes and intent." *Voice of Cornerstone Church Corp.*, 160 S.W.3d at 666 (quoting Tex. Prop. Code Ann. § 202.003(a)). *See also Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987); *MPH Production Co., Inc.*, 2012 WL 1813467, at \*3 ("We do not look for the subjective intent of the parties, which may be conflicting; instead, it is the objective intent, the intent expressed or apparent in the writing, that is sought."). Words and

phrases used in a restrictive covenant must be given their commonly accepted meaning. *Id*. at 657-8. Whether a restrictive covenant is ambiguous is a question of law, which must be resolved by examining the covenant as a whole in light of the circumstances present when the parties entered the agreement. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist. Of Harris*, 438 S.W.3d 661, 669 (Tex. App. – Houston [1st Dist.] 2014, *reh'g overruled* (July 10, 2014), *review denied* (Dec. 19, 2014)). If there is no ambiguity regarding a deed restriction, the court must decide the intent from the language used in the document. *Silver Spur Addition Homeowners v. Clarksville Seniors Apts.,* 848 S.W.2d 772, 774 (Tex.App.-Texarkana 1993, writ denied). *Gonzalez v. City of Houston*, 01-00-01195-CV, 2002 WL 221586 (Tex. App.—Houston [1st Dist.] Feb. 14, 2002, no pet.). Covenants restricting the free use of land are not favored and may be enforced only when the are confined to a lawful purpose and are clearly worded. *Wilmoth v. Wilcox*, 734 S.W.2d at 657-58 (citing *Davis v. Huey*, 620 S.W.2d 561 (Tex. 1981)). Doubts are to resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be strictly construed against the party seeking to enforce it. *Id*. In construing the operative language of a restrict covenant, "[t]he words used in the restriction, and the restriction as a whole, may not be enlarged, extended, stretched, or changed by construction." *Id*.

In the current case, the Deed Restriction specifically identifies the party(ies) that the original drafters intended to have standing to enforce the Deed Restriction, reflecting the broader consideration given for what was intended to be the sale of Moseley's Truck Stop as a going concern. Defendant is not one of those parties.

There are two documents that originally conveyed rights and duties between Moseley as seller, and Gorman as purchaser – the Deed Restriction and the Warranty Deed. The Warranty

14

Deed was the conveyancing instrument that transferred title of the 5 Acres. The Deed Restriction, in turn, provided that Moseley would restrict the usage of the 6.3 Acres. The Warranty Deed does not reference the Deed Restriction in any way. It does not attach the Deed Restriction as an exhibit. The Deed Restriction names its intended beneficiaries. The clear, unambiguous language states that the Deed Restriction is "for the benefit of Robert T. Gorman and wife, Nancy S. Gorman, and their successors and assigns. . . ." This clear language evidences the intent of the original contracting parties to limit the right of enforcement to Gorman and his successors and assigns of the Deed Restriction, in keeping with the overall intent that Plaintiff agreed to sell Gorman Moseley's Truck Stop as a going concern. Put another way, the purpose of the Deed Restriction is fulfilled only by the operation of Moseley's Truck Stop on the 5 Acres by Gorman or his successor or assigns to the Deed Restriction. The facts in this case show that there was no assignment of the Deed Restriction to any of the six parties who purchased the 5 Acres after Moseley sold it to Gorman. (R.66).

Instead, the 5 Acres, without any assignment of the Deed Restriction, was purchased by foreclosure sale by Lender. If the 5 Acres had been sold, along with the truck stop located on it, to a regular purchaser (as opposed to a foreclosing bank), one might assume that Gorman would have assigned the Deed Restriction to the 6.3 Acres to a purchaser as a part of the sale of the 5 Acres as part of a sale of the going concern. Certainly if a purchaser were interested in the benefits of the Deed Restriction such a purchaser would have insisted on an assignment of the Deed Restriction. If that had happened, the purchaser would clearly have become a "successor" to Gorman's rights under the Deed Restriction, and the Deed Restriction would have been enforceable by the successor. Instead, the Deed Restriction language is clear that the beneficiary of its covenants are only Gorman, his wife, and their successors and assigns. Since the Deed

Restriction is not mentioned in the Warranty Deed, the term "successor" can only mean a party who succeeds to the Deed Restriction. Words and phrases in a restrictive covenant must be given their commonly accepted meaning. *Wilmoth v. Wilcox,* 734 S.W.2d at 657-58; *Gonzalez*, 2002 WL 221586.

Because Defendant never received an assignment of the Deed Restriction, and does not qualify as a successor to the Deed Restriction (as well as none of the other five intervening purchasers of the 5 Acres), there is no privity of estate between Moseley and Defendant in connection with the Deed Restriction that would allow Arnold to attempt to enforce the Deed Restriction. *Clear Lake Apartments, Inc. v. Clear Lake Utils. Co.*, 537 S.W.2d 48, (Tex. Civ. App.--Houston [14th Dist.] 1976, *writ granted), aff'd* at 549 S.W.2d 385 (Tex. 1977); *Jim Walter Homes v. Youngtown, Inc.,* 786 S.W.2d 10, 11 (Tex. App.--Beaumont 1990, *no writ*); *Tarrant Appraisal Dist. v. Colonial County Club,* 767 S.W.2d 230, 235 (Tex. App.--Fort Worth 1989, *writ denied*). The Deed Restriction says on its face that it is limited to be "for the benefit of Robert T. Gorman and wife, Nancy S. Gorman, and their successors and assigns. . . ." The Deed Restriction was never assigned by Gorman to any party, and was not collateral securing any loan.

The Trial Court therefore erred as a matter of law in entering Final Judgment in favor of Defendant because Defendant lacks standing to enforce the Deed Restriction. Because Defendant is not a "successor or assign" to the Deed Restriction, she has no standing to enforce the Deed Restriction against the 6.3 Acres. Defendant is not part of the limited group of beneficiaries specifically identified by the clear, unambiguous terms of the Deed Restriction with standing to enforce the Deed Restriction. In the Trial Court below, Defendant raised no response to the clear, unambiguous terms of the Deed Restriction limiting the class of parties entitled to enforce the Deed Restriction, of which she is presumed to have constructive notice of as a recorded

instrument. Defendant has not produced any evidence in the record to show that she has received an assignment of the right to enforce the Deed Restriction from Gorman or any of his successors or assigns. This Court should therefore reverse the Trial Court's Final Judgment and find that the Deed Restriction is unenforceable by Defendant or any subsequent purchaser of the 5 Acres purchasing by and through Defendant without an assignment of the Deed Restriction from Gorman or his successors and assigns.

**C. The Final Judgment Ignores Genuine Issues of Material Fact Related to Application of the Doctrine of Changed Condition.**

A Deed Restriction does not exist in a vacuum. Rather, it may be properly understood only within the contrxt of the overall transaction undertaken in this case between Plaintiff and Gorman for the sale of Moseley's Truck Stop as a going concern. The original intention of Moseley and Gorman for the existence of the Deed Restriction was to protect the value of Moseley's Truck Stop, the business sold by Moseley to Gorman in 1985, almost 30 years ago. Yet this purpose was frusturated not long after the transaction closed. The business was foreclosed, shut down, burned down, destroyed, and abandoned over 24 years ago. All remnants of the business, including all improvements and fuel tanks, were dug up and removed from the 5 Acres over 24 years ago. The 5 Acres has been sold six times, each time to a buyer that did not redevelop the property for use as a truck stop and did not therefore obtain an assignment of the enforcement rights to the Deed Restriction. In short, the sole reason for the existence of the Deed Restriction by Gorman no longer exists. (R.67).

Change in the character of a general area constitutes grounds for affirmative relief against restrictive covenants by way of cancellation or modification where the change has been so radical as to render perpetuation of the restriction of no substantial benefit to the dominant estate and the original purpose of the restriction has been defeated. *Cowling v. Colligan*, 312 S.W.2d

943 (Tex. 1958); *Scaling v. Sutton*, 167 S.W.2d 275; *Bethea v. Lockhart*, 127 S.W.2d 1029 (Tex. Civ. App. – San Antonio 1939), *writ refused*; *Overton v. Ragland*, 54 S.W.2d 240 (Tex. Civ. App. – Amarillo 1932), *writ dismissed*; *Abarnathy v. Adou*, 49 S.W.2d 476 (Tex. Civ. App. – Beaumont 1932, no writ); *Ragland v. Overton*, 44 S.W.2d 768 (Tex. Civ. App. – Amarillo 1931, no writ). In determining whether a "radical" changed condition has occurred, courts look to: (1) the size of the restricted area; (2) the location of the restricted area with respect to where the change has occurred; (3) the type of change or changes that have occurred; (4) the character and conduct of the parties or their predecessors in title; (5) the purpose of the restrictions; and (6) to some extent, the unexpired term of the restrictions. *Davis v. Canyon Creek Estates Homeowners Ass'n.*, 350 S.W.3d 301, 309 (Tex. App. – San Antonio 2011, pet. denied). Alternatively, the Texas Supreme Court has held that a court may refuse to enforce a restrictive covenant when actions of beneficiaries of the restriction amount to an abandonment of the covenant or a waiver of the right to enforce it. 5 Restatement of the Law of Property §561; 2 American Law of Property §9.38; 14 Am.Jur. 644-646, Covenants, Conditions and Restrictions §§ 295-298; 12 Tex.Jur. 172-174, Covenants and Conditions §108.

The 5 Acres has been foreclosed and then sold on no less than 5 occasions since the granting of the Deed Restriction in 1985. Not one of the subsequent purchasers of the 5 Acres since the foreclosure against Gorman's interest have operated any business on the 5 Acres that the Deed Restriction was intended to protect. The entire purpose of the Deed Restriction, manifested by the original covenanting parties' express intent, has been defeated for almost 30 years. Yet, while the 5 Acres has remained vacant and undeveloped for its original purpose for more than two decades, traffic patterns at Interstate 20 and Highway 43 have dramatically changed in 29 years, no longer making a Deed Restriction necessary or provident. (R.67).

Defendant suggested to the Trial Court, without any supporting facts or opinions, that the changes cited by Plaintiff are not sufficiently radical to trigger application of the changed condition doctrine. Defendant's naked statement on this point does not acknowledge the most radical fact of the entire litigation – the Deed Restriction has not served its singular purpose for almost thirty years! Despite Plaintiff's and Gorman's clear intention to preserve the going concern of Moseley's Truck Stop in the transactional documents, the 5 Acres has been left undeveloped and out of commerce for almost three decades, a complete frustration and abandonment of the original intent of the Deed Restriction. Furthermore, the Deed Restriction is preventing economic development of the 6.3 Acres for its highest and best use, preventing free alienation of the property, and preventing the public from having one or more truck stops at a critical intersection. (R.67). Defendant's past actions with the 5 Acres and current positions in this litigation completely block *both* properties from productive economic use. Because the original Moseley's Truck Stop burned down, was completely dismantled, and never subsequently redeveloped, the Deed Restriction no longer secures the benefits for which it was intended 29 years ago and therefore provides no general social or economic benefit for the area. At a minimum, the dramatic changes to the 5 Acres and the 6.3 Acres, the lack of any development on the 5 Acres for almost 30 years, and the questionable utility of a Deed Restriction protecting a defunct going concern raises genuine issues of material fact in connection with the application of the changed condition doctrine to the current case.

As a final matter, in determining that deed restrictions are no longer enforceable due to changed circumstances, courts are more likely to deny enforcement when the changes have been wrought by the party seeking judicial enforcement. *Cowling v. Colligan,* 312 S.W.2d at 945; *Oldfield v. City of Houston*, 15 S.W.3d 219, 228 (Tex. App.—Houston [14th Dist.] 2000, pet.

19

denied). In the present case, the succession of owners of the 5 Acres have significantly caused the changed circumstances by: (1) allowing foreclosure of the property; (2) allowing the truck stop to burn down; (3) failing to redevelop the truck stop after it burned down; and (4) allowing the remaining portions of the truck stop, including buildings, underground tanks, etc., to all be torn down and removed. Plaintiff does not dispute that Defendant is free to the free use and enjoyment of her property within the limitations of the law, and certainly Defendant was under no obligation to develop the 6.3 Acres for the exclusive purpose of operating a truck stop. Yet Defendant may not disregard the underlying purpose of the Deed Restriction without abandoning whatever benefit the Deed Restriction may have once conferred on the 6.3 Acres. This Court must therefore reverse the Trial Court's Final Judgment in favor of Defendant.

## SUMMARY

For the reasons set forth above, the Trial Court reversibly erred in entering Final Judgment in favor of Defendant. Defendant lacks standing to enforce the Deed Restriction under the clear, unambiguous terms of the Deed Restriction. Additionally, Plaintiff has raised genuine issues of material fact related to application of the changed conditions doctrine to the facts and circumstances of the case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays this Honorable Court reverse the Final Judgment of the Trial Court and remand this case for further proceedings on the merits as this Court deems necessary. Plaintiff further prays for such other and further relief, legal or equitable, special or general, to which it may be entitled.

20

Respectfully submitted,

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske
State Bar No. 16351640
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE GOOLSBY & KATHMAN, P.C.
15305 Dallas Parkway, Suite 300
Addison, Texas 75001
(214) 658-6500 – Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**ATTORNEYS FOR THE APPELLANT**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on September 11, 2015, I caused to be served the foregoing pleading upon the counsel listed below via email and also via the Court's electronic transmission facilities.

Deane A. Searle
Searle & Searle, PC
P.O. Box 910
305 West Rusk Street
Marshall, Texas 75671
Email: dsearle54@gmail.com

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske