COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LEGACY ESTATES, LLC, | § | |
| Appellant, | § | No. 08-22-00134-CV |
| v. | § | Appeal from the |
| SIGNAL HILL ESTATES HOMEOWNERS ASSOCIATION, INC., SATURN FIVE | § | 98th Judicial District Court |
| SIGNAL HILL, LLC, EVAN LOOMIS; | § | of Travis County, Texas |
| BRETT AMES; DOUG CLARK; GRANT AMES; and SCOTT WALTHER, | § | TC# D-1-GN-20-006436 |
| Appellees. | § | |

## O P I N I O N[1]

Appellant Legacy Estates, LLC (Legacy), a property owner and home-building company, appeals a take-nothing summary judgment rendered against all of its claims. Legacy sued several parties alleging it was improperly prohibited from building a private home on a lot situated in the Signal Hill Estates subdivision of Travis County. The suit alleged a breach of contract and several other causes of action against a group of individuals and entity defendants, all of whom are connected to the development or management of the subdivision (collectively, the Appellees). The

---

[1] This case was transferred from the Austin Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of that court to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

entity-defendants include Saturn Five Signal Hill, LLC (Saturn Five), and Signal Hill Estates Homeowners Association, Inc. (the Association), the subdivision developer and property owner's association, respectively. By means of an Architectural Control Committee (the ACC), the Association is vested with authority over all home building plans of the subdivision. Individual-defendants include Evan Loomis, a principal of Saturn Five, and four builders, Brett Ames, Grant Ames, Doug Clark, and Scott Walther (the Builders), who all serve on the Association's ACC. On appeal, Legacy contends the trial court erred in granting the Appellees' joint motion for summary judgment and in rendering certain related rulings. Finding no reversible error, we affirm.

## I. BACKGROUND

### A. Factual background

Signal Hill Estates is a subdivision in Travis County, Texas. The original owner and developer entered into and filed of record a declaration of covenants, conditions and restrictions governing all lands of the subdivision. Saturn Five, along with its partner Evan Loomis, is the developer of Signal Hill Estates. Saturn Five purchased the subdivision in April 2018 as developed and undeveloped land. As a result of the purchase, Saturn Five was assigned all declaration rights including those rights arising under the original governing instrument. Pursuant to those rights, Saturn Five soon filed a Second Amended and Restated Declaration of Covenants, Conditions and Restrictions of Signal Hill Estates (the Declaration), which is the instrument that is relevant to Legacy's claims.

Among its several provisions, the Declaration provides that all property of the subdivision is held and occupied subject to the "easements, restrictions, covenants and conditions which are for the purpose of protecting the value and desirability of, and which shall run with the Property and shall be binding on all parties having any right, title or interest in or to the Property or any part

2

thereof, . . . and shall inure to the benefit of each Owner thereof." Based on the Declaration, property owners who purchase land are notified of the developer's desire to create and carry out a uniform plan for the benefit of both present and future owners of subdivision property. To this end, all property is owned subject to the Declaration terms. Among those terms, the Declaration provides for the management of the subdivision by an Association of homeowners, which is charged with the powers prescribed by law or set forth in the governing instrument. The affairs of the Association are conducted by a board of directors. Prior to building on any property, each owner must submit plans to the Association's ACC for its written approval consistent with Declaration requirements. During a period when Saturn Five remains in control of the Association, which is known as the "Declarant Control Period," the Declaration provides that Saturn Five may appoint, remove, and replace all ACC voting members.

After purchasing the subdivision, Saturn Five soon entered into an agreement with three custom home building companies of Travis County, Eppright, ADB, and Sendero (the Builder Companies). Saturn Five agreed those companies would be given exclusive rights to build in the subdivision "for one (1) year after the Subdivision was 'substantially completed.'" But the agreement also provided that Saturn Five could sell five "friends and family" lots during the exclusivity period. Regardless of these terms, all homes to be constructed in the subdivision still required ACC approval, wherein the ACC would consist of Doug Clark, Brett Ames, Grant Ames, and Scott Walther, who each worked for one of the Builder Companies. The ACC members would also be assisted by Andrew Logan, the ACC's review architect.

Legacy is a limited liability company with Samir Gulati as its principal and authorized agent. In February 2019, Saturn Five sold two of its "friends and family" lots to Legacy—the Verandero Lot and the Grumbles Lot. Legacy began construction on the Verandero Lot prior to

seeking ACC approval or permission. Legacy eventually submitted, and resubmitted, an application to the ACC which was ultimately approved by the ACC.

Legacy then applied to build on the Grumbles Lot. The ACC soon notified Legacy that its application was not in compliance with the architectural guidelines for several reasons including a failure to comply with the 60/40 square footage ratio for the first and second floor. Legacy submitted revised plans and a variance request for the Grumbles Lot. Again, the ACC rejected the plans stating the design was not meeting the architectural guidelines. Legacy then submitted a revised set of plans and in an email it explicitly stated the plans were not final. The ACC continued to reject the plan and application, and it requested a redesign.

Legacy ultimately sold the two lots it had owned, the Verandero Lot and the Grumbles Lot. The Verandero Lot in part included the home approved by the ACC, which it had started to build but had not yet completed. Legacy then filed suit.

## B. Procedural background

In its pleading, Legacy asserted five causes of action against differing groups of Appellees. The claims included breach of fiduciary duties, breach of contract, tortious interference, negligent misrepresentation, and conspiracy. All Appellees are named defendants of the conspiracy claim, only some Appellees are named on the breach of fiduciary duties, breach of contract, and tortious interference claims, and only Loomis is named on the negligent misrepresentation claim. Legacy also sought a declaratory judgment over the meaning of the Declaration's term stating that "Second Story ratios may not exceed 40% of the living space[.]" Lastly, the petition requested that Legacy be awarded attorney's fees and costs.

The Appellees all filed general denials, special exceptions, and requests for attorney's fees. Later, Appellees jointly moved for summary judgment on both traditional and no-evidence

4

grounds. In support of their motion, Appellees provided a certified copy of the Declaration, the unsworn declaration of Evan Loomis, and business records of the Association. Included among those records, the Association provided correspondence with Legacy regarding its request for approval of plans, a copy of Legacy's various applications submitted to the ACC, email correspondence, and excerpts of the deposition transcript of Samir Gulati.

In the meantime, Legacy filed a first amended petition adding detail to its previously pleaded claims. For example, Legacy alleged that Brett Ames, Doug Clark, Scott Walther, and Evan Loomis breached fiduciary duties in their capacity as members of not only the Association's Board of Directors but also as members of the ACC. As for the breach of contract claim, the amended petition expanded such as to name all Appellees. Also, Legacy substantively alleged that Appellees applied the Declaration in an arbitrary and capricious manner.

All Appellees filed amended answers raising affirmative defenses, including waiver. The individual defendants also added verified denials averring they were not liable in the capacities in which they had been sued. Finally, Legacy filed its response to defendants' joint motion for summary judgment. Legacy agreed its declaratory judgment action was subsumed in its breach of contract action, and it waived its request for declaratory judgment. In support of its response, Legacy attached exhibits including excerpts of deposition transcripts, business records, and an unsworn declaration of Samir Gulati.

The trial court granted Appellees' motion for summary judgment in full without specifying the grounds on which it based its decision. Because the order did not address claims for attorney's fees, it was not a final order. Later, the trial court signed an agreed order awarding attorney's fees and costs conditioned upon Appellees' prevailing on appeal. The trial court entered a final

judgment granting Appellees' motion for traditional summary judgment in full and awarding attorney's fees.

This appeal followed.

## II. ISSUES ON APPEAL

Legacy brings eight issues on appeal. In its first five issues, Legacy argues the trial court erred in granting summary judgment because it raised a genuine issue of material fact as to its various claims. Those claims include causes of action of abuse of discretionary authority under Texas Property Code § 202.004, breach of contract, tortious interference, negligent misrepresentation, and conspiracy. In its sixth issue, Legacy argues that officers or directors of a homeowner association owe fiduciary duties to homeowners as a matter of law when the Association's governing bylaws provide for a duty of loyalty. In its seventh issue, Legacy contends that Appellees' affirmative defense of waiver was not properly raised. Finally, in its eighth issue, Legacy seeks a conditional reversal of the award of attorney's fees and costs should Appellees not prevail on appeal.

We consider each issue in turn.

## III. SUMMARY JUDGMENT STANDARD OF REVIEW

We review a summary judgment de novo, viewing the evidence "in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (quoting *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)).

When moving for traditional summary judgment, the movant must demonstrate no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Zive*, 644 S.W.3d at 173. Once a movant establishes a right to summary judgment, the burden then

"shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A fact issue exists if reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

A defendant's traditional motion for summary judgment is properly granted by the trial court if the defendant has defeated each of the plaintiff's claims by either disproving at least one element of the claim or by establishing all elements of an affirmative defense to it. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018). When the order granting summary judgment does not specify the grounds relied on for the ruling, we affirm the summary judgment if any of the theories advanced in the trial court and preserved for appeal are meritorious. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).

## IV. THE PROPERTY CODE CLAIM

In its first issue, Legacy contends the evidence established a genuine fact issue as to whether the Builders and the Association abused their discretionary authority under Texas Property Code § 202.004, through the ACC's arbitrary and capricious decision making. Legacy maintains the Appellees were not empowered to exercise unlimited discretion in making decisions impactful of Legacy's plans to build on the Grumbles Lot. *See* TEX. PROP. CODE ANN. § 202.004(a) ("An exercise of discretionary authority by a property owners' association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory."). Specifically, Legacy contends the evidence, when viewed in its favor, established the Association and its ACC—acting at the direction of certain builders—

7

persistently applied one standard to one set of builders while applying a diametrically opposite standard to Legacy.

In opposition, Appellees argue first, that Legacy's application to build on the Grumbles Lot never met the minimum requirements of the Declaration's restrictive covenants; and second, if it is assumed for the sake of argument that any of Legacy's plans conformed with applicable requirements, that the ACC was vested with unlimited authority to approve or deny any application in any event. In short, Appellees maintain that none of Legacy's plans conformed with requirements; but even if they did, the Declaration empowered the ACC to reject such plans regardless of guideline conformity. Citing to Art. III, Section 3.21 of the Declaration, Appellees urge, "the ACC, as provided by the Current Declaration, has absolute discretionary authority by which to approve or deny any application[.]"

To begin, we first determine whether the Property Code's "arbitrary and capricious" restriction applies in this instance.

**A. The nature and extent of the ACC's authority to grant or deny building plans**

The parties do not dispute that the Declaration governing the subdivision includes restrictive covenants. More than a century ago, the Supreme Court of Texas recognized "the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal." *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018) (citing *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922)). Even still, restrictive covenants limit permissible uses of land for which landowners can ordinarily make of their property. *Id.* at 279 (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.3(3) (AM. L. INST. 2000) and TEX. PROP. CODE. ANN. § 202.001(4)). While such restraints are not generally favored, *Tarr* further noted the Supreme Court had previously

8

acknowledged that these covenants may enhance the value of real property. *Id.* (citing *Davis v. Huey*, 620 S.W.2d 561, 565 (Tex. 1981)). Thus, "when land is sold, the agreed-to covenants 'enter into and become a part of the consideration.'" *Id.*

Courts have long recognized, "[t]he buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots." *Id.* at 280 (quoting *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. App.—El Paso 1914, no writ)). To this extent, restrictive covenants "between the original owner and each purchaser is . . . mutual." *Id.* As a result, courts have "always treated unambiguous covenants 'as valid contracts between individuals.'" *Id*. (quoting David A. Johnson, *One Step Forward, Two Steps Back: Construction of Restrictive Covenants After the Implementation of Section 202.003 of the Texas Property Code*, 32 TEX. TECH L. REV. 355, 358 (2001)). As such, restrictive covenants are "subject to the general rules of contract construction." *Id*. (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). Restrictive covenants are "unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Pilarcik*, 966 S.W.2d at 478.

In construing a restrictive covenant, our primary task is to seek the intent of the parties to give effect to their purposes. *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 667 (Tex. App.—Austin 2005, no pet.). "Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement giving the words used in the restrictive covenant . . . the meaning which they commonly held as of the date the covenant was written, and not as of some subsequent date." *Tarr*, 556 S.W.3d at 280 (internal quotation marks and citations omitted). When doing so, a restrictive covenant's words "may not be enlarged, extended, stretched or changed by construction." *Id.* (quoting *Wilmoth v. Wilcox*, 734

S.W.2d 656, 657 (Tex. 1987)). "And courts should avoid any 'construction that nullifies a restrictive covenant provision.'" *Id.* (quoting *Pilarcik*, 966 S.W.2d at 479).

Here, the parties principally dispute the meaning of terms included in Art. III, Section 3.21 of the Declaration, titled "Architectural Guidelines." The opening line of that section states there is no specific architectural style required by the ACC "but the general intent of the subdivision is a fresh take on modern farmhouse, hill country and transitional." This provision further states: "The styles should complement and enhance the natural beauty of the development and be congruent with the Texas Hill Country and healthy living setting." Providing further details, this section includes requirements such as "[s]econd story ratios may not exceed 40% of the living space[;]" and "[t]he maximum unbroken exterior wall plane is 40' before a 2' offset is required." Lastly, however, the section includes the following language:

> Notwithstanding the foregoing, the ACC is empowered to reject or accept a plan that does or does not meet these requirements, if in the ACC's *sole discretion* the building would enhance, blend in, or detract from the general appearance of the neighborhood. (emphasis added).

In contending that the ACC was authorized to deny Legacy's plans regardless of whether any of them conformed to requirements, Appellees argue that the ACC exercised "absolute discretionary authority by which to approve or deny any application." To that extent, Appellees contend the limitation imposed by § 202.004 of the Property Code, which prohibits arbitrariness and capriciousness in the exercise of discretionary authority, does not apply based on the Declaration's express terms. Appellees point out that the final sentence of Article III, Section 3.21, states that "notwithstanding" the previously laid out requirements, the ACC may accept or reject a plan "if in the ACC's sole discretion," it determines the building "would enhance, blend in, or detract from the general appearance of the neighborhood." Appellees rely on this clause and, more

10

specifically, its vesting of "sole discretion," as support for its claim that ACC decisions are unreviewable. To that interpretation, we disagree.

The Declaration provides no definition of the term "sole discretion." When a contract does not define a term or provide otherwise, we interpret its language according to its plain, ordinary, and generally accepted meaning in an effort to give effect to the written expression of the parties' intent. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019). To do so, we look to dictionaries to discern the meaning of commonly used terms. *In re Davenport*, 522 S.W.3d 452, 456–57 (Tex. 2017).

We focus first on the term "sole discretion." "Sole," an adjective, is defined as "functioning independently and without assistance or interference." *See Sole*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1118 (10th ed. 1997). "Discretion," a noun, means the "power of free decision or latitude of choice within certain legal bounds." *See Discretion*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 332 (10th ed. 1997). Bringing the two terms together, "sole discretion" ordinarily describes the "power to make decisions without anyone else's advice or consent." *See Sole Discretion,* BLACK'S LAW DICTIONARY 565 (10th ed. 2014). By its plain terms, the Declaration provides that the ACC operates independently and without need for consent from any other person or group. Continuing, however, Section 3.21 includes further terms. Although the ACC may act alone in accepting or rejecting plans, its exercise of authority is based on whether "the building would enhance, blend in, or detract from the general appearance of the neighborhood."

To interpret the clause as a whole, we are guided by a decision of the Austin Court of Appeals in *La Ventana Ranch Owners' Ass'n, Inc. v. Davis*, 363 S.W.3d 632, 646 (Tex. App.— Austin 2011, pet. denied). There, the court interpreted a declaration stating that an association was

11

authorized to grant a variance "when in the opinion of the [association], in its *sole and absolute discretion*, such variance will not impair or detract from the high quality development of the Property and such variance is justified due to unusual or aesthetic considerations, topographic or septic considerations, or unusual circumstances." *La Ventana*, 363 S.W.3d at 646 (emphasis added). Because the parties had contracted for "sole and absolute discretion," *La Ventana* determined that such language excluded a reasonableness standard that would otherwise be imposed by law on such association decisions. *Id.*

As contrasted with *La Ventana*, the term "absolute" is not included in Section 3.21 of the Declaration's terms. That absence distinguishes the circumstances. "Absolute" is defined as "having no restriction, exception, or qualification." *See Absolute*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 4 (10th ed. 1997). Although the ACC is empowered to act independently in its "sole discretion," its discretion is not absolute or otherwise defined as "without restriction, exception, or qualification." *Id*. Rather, as we earlier noted, the ACC must exercise its authority such as to determine whether "the building would enhance, blend in, or detract from the general appearance of the neighborhood.". Given that the words of a restrictive covenant "may not be enlarged, extended, stretched or changed by construction[,]" we cannot add the term "absolute" to the Declaration's language. *See Wilmoth*, 734 S.W.2d at 657. Section 3.21's language provides for "sole discretion," but not "sole and absolute discretion." *See La Ventana*, 363 S.W.3d at 646. Accordingly, we reject Appellees' argument urging that the ACC had "absolute discretionary authority by which to approve or deny any application" pursuant to Article III, Section 3.21 of the Declaration.

Instead, to the extent that discretionary authority is exercised by a homeowner's association, § 202.004 of the Property Court requires that such authority be exercised in a manner

not arbitrary or capricious. *See* TEX. PROP. CODE ANN. § 202.004(a). ("An exercise of discretionary authority by a property owners' association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory."). As a matter of law, this section creates a rebuttable presumption that an owner's association acts reasonably in exercising such discretionary authority. *See id.* Given this presumption of reasonableness, the initial burden shifted to Legacy to present sufficient evidence to overcome the presumption and create a fact issue concerning the reasonableness of the ACC's exercise of discretion.

**B. Whether Legacy raised a fact issue on its claim of abuse of discretionary authority**

Legacy argues it produced summary judgment evidence to show a fact issue existed as to whether Appellees selectively enforced its own rules. In a series of claims, Legacy contends the Association imposed an implied requirement that only builders of luxury homes could build in the subdivision. It argues the ACC applied this "fabricated rule" to exclude it as a builder; that the ACC allowed Logan, its review architect, to unilaterally approve building plans of the other builders but required unanimous approval for Legacy's; that the ACC selectively enforced the 60/40 Rule and the Sidewall Articulation Requirement; and finally, that the ACC denied Legacy's plans, which complied with the ACC's previous comments, requiring instead that Legacy redesign its home.

Legacy asserts the evidence in this case was sufficient to raise a fact issue similar to that raised in *Li v. Pemberton Park Cmty. Ass'n, Inc.*, 652 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2022, no pet.). There, on remand from the Supreme Court, the Fourteenth Court of Appeals decided that a homeowner-plaintiff raised a genuine issue of material fact as to an

association's exercise of discretionary authority when enforcing restrictive covenants in a manner that was arbitrary, capricious, or discriminatory. *Id.* at 899. In *Li*, the plaintiff presented evidence that the association sent her four different letters alleging the paint color on a repaired area of her house failed to match despite her repeated attempts at matching the color. *Id.* at 897–898. Homeowner Li also sent an email to the association pointing out that many other homes in the community had similar violations, but no enforcement efforts had been filed or suits brought against those owners. *Id.* at 898. Plaintiff supported her allegation with photographs of other houses in the subdivision showing alleged violations of the restrictive covenants which she claimed were not corrected. *Id.* There was also evidence of the association's violation history showing fourteen with the same violation, but only two had notes showing the violations had been remedied. *Id.* The association did not otherwise prove that all the other alleged violations had been corrected or were not violations. *Id.* at 899. On appeal, *Li* concluded that the summary judgment evidence raised a fact issue as to whether the association's exercise of discretionary authority against Li was arbitrary and capricious. *Id*.

Here, unlike in *Li*, Legacy presented no evidence establishing a fact issue on whether the ACC had acted selectively in enforcing the restrictive covenants of the subdivision. First, the evidence established without dispute that Legacy's plan to build on the Verandero Lot was approved despite Legacy not being one of the exclusive Builders' Companies. Second, Legacy failed to raise a fact issue regarding its complaint that the ACC allowed Logan to unilaterally approve the Builders' applications but required unanimous votes of the ACC members with respect to its applications. Legacy not only failed to point to any evidence supporting this complaint, but it contradicts other evidence. The Declaration provides that the ACC may meet to perform its

duties, may designate unanimously and in writing one of its members to act on its behalf, and in the absence of such a designation, may act by majority vote without a meeting.

Lastly, Legacy contends the ACC selectively enforced the 60/40 rule as to its application to build but it was not enforced on other applications. To support its argument, Legacy points to an application of Sendero Homes. The application was approved with a note stating: "Second story ratio [cannot] exceed 40% of first story. Currently you are showing 49%. This is acceptable, but please be sure to comply on future projects." Legacy asserts this discrepancy raises a fact issue that the ACC selectively enforced this requirement. However, there is also evidence in the record establishing that the calculations thought to be in excess of the 60/40 rule were themselves incorrect, and the project actually complied. Legacy concedes this fact but contends it still creates a fact issue on whether the ACC acted arbitrarily and capriciously because Logan *thought* he was granting a variance. Considering that the application actually complied with requirements, we find this information alone to be too speculative to create a fact issue as to whether the ACC in fact granted a variance when none was needed.

We conclude that Legacy failed to present any evidence that the ACC selectively enforced the architectural requirements. Thus, Legacy failed to present evidence rebutting the presumption that any exercise of discretion by the ACC was reasonable. *See* TEX. PROP. CODE ANN. § 202.004(a).

We overrule Legacy's first issue.

## V. BREACH OF CONTRACT

In its second issue, Legacy argues it presented a fact issue on its breach of contract claim. Legacy maintains the Association breached the Declaration in two ways: first, by requiring an entire redesign of the Grumbles Lot when conforming plans were provided; and second, by

imposing an "extra-contractual" requirement limiting approved builders such as to exclude Legacy. Appellees respond that Legacy never submitted a conforming plan for the Grumbles Lot, and because Legacy built on the Verandero Lot, the evidence established that no builder exclusivity was wrongfully imposed.

"[A]ny person entitled to benefit under the terms of a restrictive covenant may enforce it." *Moseley v. Arnold*, 486 S.W.3d 656, 662 (Tex. App.—Texarkana 2016, no pet.). Legacy relies on the same evidence it presented to show that Appellees violated § 202.004 of the Property Code. Applying the same reasoning as we stated earlier, we conclude that Legacy failed to raise a genuine issue of material fact regarding its breach of contract claim. By its plain terms, the Declaration imposed a duty on the ACC to enforce the architectural guidelines and requirements of the Signal Hill Estates subdivision. To that end, the Declaration vested the ACC with sole discretion to accept or reject plans if it determined a plan would detract from the general appearance of the neighborhood. Legacy agreed to abide by the architectural guidelines when it bought its two lots. *See Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 601 n.17 (Tex. App.—Austin 2015, no pet.).

As for the Grumbles Lot, no evidence showed that Legacy ever submitted a plan which met the second story ratio requirement. Instead, Legacy merely argues that "multiple Appellees testified that if the Grumbles plans were resubmitted with incremental changes to comply with the 60/40 Rule and the Sidewall Articulation Requirement, the design would be approved." When viewing the evidence favorable to Legacy, as we must, the evidence established only that the ACC notified Legacy of its failure to submit a fully completed application conforming with the 60/40 ratio, and thereafter, a conflict arose over Legacy's claim that it was otherwise instructed to start over from scratch, which it then refused to do. Because the evidence conclusively established that

16

Legacy's plans were rejected due to their failure to conform to Declaration requirements, and Legacy provided no controverting evidence establishing a conforming plan, Appellees negated an essential element of Legacy's breach of contract claim. Moreover, if Appellees employed an extra-contractual requirement intending to exclude Legacy as a builder, it failed in its own endeavor because the evidence further showed, and Legacy admitted, that the ACC approved Legacy's plan to build on its Verandero Lot. Accordingly, the trial court did not err by granting summary judgment on this ground.

We overrule Legacy's second issue.

## VI. TORTIOUS INTERFERENCE

In its third issue, Legacy argues it presented evidence creating a genuine issue of fact as to whether builders Brett Ames, Grant Ames, Doug Clark, and Scott Walther, interfered with Legacy's contract with the Association or with its prospective contracts with potential purchasers of the properties. Appellees argue that because the Builders were serving at all times as members of the Association's ACC, they were parties to the Declaration and they could not interfere with their own contract as a matter of law. With respect to interference with prospective contracts, Appellees argue their actions towards Legacy were not independently tortious acts supporting of a claim.

Tortious interference is established by a showing of: (1) the existence of a valid contract subject to interference; (2) the defendant's willful and intentional interference with the contract; (3) injury proximately caused by the interference; and (4) actual damage or loss. *Cmty. Health Sys.*, 525 S.W.3d at 689. As a general rule, subject to limited exceptions not urged here, "a corporation's agent cannot tortiously interfere with the corporation's contract[.]" *Id.* at 690.

17

To show tortious interference with Legacy's contract with the Association, Legacy had to raise a fact issue that the Builders acted so contrary to the Association's best interests that they "'could only have been motivated by personal interests' and thus could not have been acting within the scope of [their] agency[.]" *Id.* at 691 (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995)). In determining whether the Builders acted against the Association's interests, we consider the Association's evaluation of the Builders' actions, "because a principal is a superior judge of its own best interests[.]" *Id.* at 695. If the Association has not complained about the Builders' actions, then the Builders cannot be held to have acted contrary to the Association's interests. *See id*.

Legacy has not produced evidence of any complaint from the Association about the actions of the Builders. It follows that Legacy cannot establish that the Builders acted contrary to the Association's interests by interfering with the Declaration, the Association's contract with Legacy. Legacy is thus unable to establish its claim for tortious interference with its contract with the Association. *See id*.

Legacy argues the Builders tortiously interfered with its prospective contracts because, in addition to Appellees' actions in enforcing the restrictive covenants, Legacy alleges the Builders knew there was a reasonable probability that Legacy would enter into a contract to sell the lots at a profit. Appellees advocate that because Legacy cannot show evidence of "otherwise wrongful or tortious" conduct in order to maintain this cause of action, it fails as a matter of law.

Among other elements, to prove tortious interference with prospective contractual relations, a party must show a reasonable probability of a prospective business relationship; an independently tortious or unlawful act by the defendant; and actual damage or loss. *See Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

As stated above, the Builders' actions against Legacy amounted to applications of the architectural guidelines found in the Declaration and a contractually authorized discretionary rejection of building plans. These actions were not violations of the Declaration and are not independently tortious or unlawful. *See id.* Legacy has not raised other actions of the Appellees that are alleged to be independently tortious or unlawful. We have been presented with no actions on behalf of Appellees that can form the basis of a claim for tortious interference with prospective contracts, and Legacy's cause of action for tortious interference with prospective contracts fails.

We overrule Legacy's third issue.

## VII. NEGLIGENT MISREPRESENTATION

In its fourth issue, Legacy claims Loomis, the Association, or Saturn Five made several representations and supplied false information for the purpose of deceiving or misleading it as to building a fence along Hamilton Pool Road to limit access to Signal Hill Estates and provide a buffer between the road and the neighborhood. Appellees moved for summary judgment on the ground that Legacy's claim of misrepresentation had become moot after Saturn Five built the fence at issue.

A party seeking to recover under a claim of negligent misrepresentation must show the defendant supplied false information for the guidance of others in their business. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

Even when the evidence is taken as true, Legacy does not allege that any statement about the building of a fence had a timeline attached, and none of the evidence submitted established a date by which the fence needed to be built. Saturn Five did construct the fence along Hamilton Pool Road along the back of the Verandero Lot, thus Legacy's claim of negligent misrepresentation in the building of the fence is moot.

19

We overrule Legacy's fourth issue.

## VIII. CONSPIRACY

In its fifth issue, Legacy asserts it presented evidence establishing a fact issue as to its claim that Appellees conspired to enforce a builder exclusivity ultra vires of Declaration terms. Legacy urges that it demonstrated Appellees applied one set of rules to themselves while excluding Legacy from building on the Grumbles Lot. Appellees respond they were entitled to summary judgment as a matter of law because there must be an underlying tort to sustain a cause of action for civil conspiracy.

The elements of civil conspiracy are:

> (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).

As the Supreme Court of Texas has recently clarified, civil conspiracy is not an independent tort. *See Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). To prevail on a claim for civil conspiracy, a party must demonstrate an underlying tort that has caused damages. *Id.* Legacy urges the underlying tort here is Appellees' actions in applying one set of rules to themselves and excluding it from building in Signal Hill. As we have discussed above, these actions, however articulated by Legacy, demonstrated, at most, that Appellees applied the architectural guidelines of the Declaration or otherwise exercised discretionary authority to uphold the general appearance of the neighborhood. We conclude these actions do not constitute independent torts as a matter of law, nor would they support a required element of a civil conspiracy claim.

We overrule Legacy's fifth issue.

## IX. BREACH OF FIDUCIARY DUTIES

In its sixth issue, Legacy claims the trial court erred in granting summary judgment on its fiduciary duty claim because the Association's officers and directors owed Legacy a fiduciary duty as a matter of law. Appellees urge there is no fiduciary duty between the Builders, the Association, and Legacy, and even if there were, it was not breached. The breach alleged by Legacy is preserving exclusivity for the Builders' Companies when the Declaration did not provide for that. We agree with Appellees that, because Legacy did, in fact, build in Signal Hill, any exclusivity was not preserved, and the breach alleged by Legacy did not occur.

Further, Appellees argue no fiduciary duty existed. To prevail on a claim of breach of fiduciary duty, a party must establish, among other elements, that a fiduciary relationship existed between the plaintiff and defendant. *See Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (per curiam). "A fiduciary relationship is an extraordinary one that the law does not recognize lightly." *Harris By and Through Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 898 (Tex. App.—Houston [1st Dist.] 1998, no pet.). "[A]lthough a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit." *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 703 (Tex. App.—Fort Worth 2018, pet. denied) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997)). Legacy has not presented evidence of any fiduciary or confidential relationship that existed prior to, and apart from, the Declaration.

The Association, as a non-profit corporation, is governed by Chapter 22 of the Texas Business Organizations Code. *See* TEX. BUS. ORG. CODE ANN. §§ 22.001–22.516. Under such

21

provisions, a director of a non-profit corporation "is not considered to have the duties of a trustee of a trust with respect to the corporation or with respect to property held or administered by the corporation[.]" *See id.* § 22.223.

Legacy argues the fiduciary relationship is created by the terms of the Declaration, but Article 3.08 of the Bylaws creates a lesser duty of ordinary care on the part of the Directors. Section 7.001(c) of the Business Organizations Code, cited by Legacy, discusses limitations of liability on governing persons within corporations but does not create duties of care. *See id.* § 7.001. Legacy cites no authority for the proposition that the Builders owed Legacy a fiduciary duty. Further, as the Association can only act through its directors, it cannot be held to a fiduciary level of care when such duty is not in fact imposed on its directors pursuant to the Declaration terms. Lastly, Legacy did not preserve for appeal a claim of informal fiduciary duty, as it never pleaded the existence of such an informal relationship. *See* TEX. R. APP. P. 33.1.

As previously stated, fiduciary relationships are extraordinary and not recognized lightly. Legacy has not presented evidence of any statutorily or contractually created fiduciary relationship to counter the authority of the Business Organizations Code and the Bylaws that indicate a fiduciary duty is not owed. Legacy did not preserve a claim of informal fiduciary relationship and it has not shown evidence that any relationship of trust and confidence existed between the parties prior to, and apart from, the contractual relationship. Appellees have established as a matter of law that no fiduciary relationship existed, thus Legacy cannot establish a claim for breach of that relationship.

We overrule Legacy's sixth issue.

22

## X.  REMAINING ISSUES

In its seventh issue, Legacy asserts Appellees' affirmative defense of waiver was not properly before the court for determination at the summary judgment stage. Because we overruled each of Legacy's issues challenging the trial court's grant of summary judgment on each claim, we need not reach the waiver issue. *See* TEX. R. APP. P. 47.1.

In its eighth issue, Legacy conditionally argues that should it prevail on appeal that attorney's fees and costs must be overturned as Appellees would no longer qualify as prevailing parties in that event. Because we overruled all issues and Appellees remain as prevailing parties, we affirm the trial court's award of attorney's fees and costs.

We overrule Legacy's seventh and eighth issues.

## XI.  CONCLUSION

We affirm the judgment of the trial court.


GINA M. PALAFOX, Justice


June 12, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.